**Charles E. HALL, II, Plaintiff,**

v.

**George ZAMBELLI; Zambelli Internationale; Zambelli Fireworks Manufacturing Co., Inc.; Charleston Festival Commission, Inc.; the City of Charleston; Onda Enterprises, Ltd., Defendants.**

Civ. A. No. 2:87–0098.

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 22, 1987.

Everett F. Thaxton, Norman T. Daniels, Daniel Tomassetti, Thaxton & Daniels, Charleston, W.Va., for plaintiff.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., for defendants Zambelli.

John Andrew Smith, Kay, Casto & Chaney, Charleston, W.Va., for Charleston Festival Com'n and City of Charleston.

Mark W. Browning, Shuman, Annand & Poe, Charleston, W.Va., for Onda Enterprises.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the motion of the Defendant Onda Enterprises, Inc. to dismiss this action for lack of personal jurisdiction. The motion has been well briefed and the Court now renders its decision.

The essential facts are not in dispute. The Plaintiff was injured while working as a volunteer during a fireworks display at the 1986 Charleston Sternwheel Regatta. He was hit in the eye when a fireworks shell exploded prematurely at a low altitude. He has sued the Defendants under a variety of legal theories. As stated, Onda, the alleged manufacturer of the allegedly defective shell, contests personal jurisdiction.

Onda originally had presented two procedural arguments—defective service of process and lack of personal jurisdiction. As to the former, it had argued that the Plaintiff was not in compliance with the Hague Convention on the *Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.* 20 U.S.T. 381.

Among other things that treaty requires the translation of the complaint into Japanese and service in a particular manner on a central authority in Japan. Onda now acknowledges—and the Court so finds—that the Plaintiff has substantially complied with the Treaty's provisions. Hence, the issue is solely one of personal jurisdiction.

■ The inquiry with regard to an issue of the instant type is always twofold: First, a court must determine whether the forum state's long-arm statute contains provisions which apply to the non-resident Defendant. Second, if the state's long-arm statute is implicated, a court must decide if the exercise of personal jurisdiction would offend constitutional principles of due process.

The Plaintiff points out that *W. Va. Code*, § 31-1-15 is the West Virginia Long-Arm statute which arguably covers the instant situation. The section which the Plaintiff relies upon provides as follows:

"[A] foreign corporation ·... shall ... be deemed to be conducting affairs or doing or transacting business herein ... (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury."

Onda does not contest the applicability of this section. Of course, it does contest the ultimate issue: Whether it manufactured the shell in question. Onda contends that notwithstanding the apparent applicability of the West Virginia Long-Arm Statute, constitutional principles prevent it from being subjected to suit in West Virginia.

■ The Court notes at the outset that this is a very close issue. The law on personal jurisdiction has not been cast in black and white simplicity since the Supreme Court's widely acclaimed decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court's recent decisions, in particular *Asahi Metal Industry Co. v. Su-*

*perior Court of California,* —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), have muddied the waters further. Having so prefaced the discussion, the Court turns to the issue at hand.

In *International Shoe,* the Supreme Court decreed that in order to subject a defendant to a judgment *in personam,* he must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court returned to this theme; it instructed that a defendant corporation is subject to suit in a particular jurisdiction only when it "purposefully avails itself of the privilege of conducting activities within the forum State...." 444 U.S. at 297, 100 S.Ct. at 567 (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). With regard to fairness, the Court placed emphasis on whether the defendant's contacts with the forum state were such that he could reasonably anticipate being hailed into court there.

On the subject of contacts, Onda argues that it has very few, if any, with West Virginia. By affidavit of Gunji Ishii, chief manager of the foreign trade department of Onda, Onda offers the following facts: Its principal place of business is in Tokyo, Japan; it has no office in West Virginia. It has no sales representative or other agent, no bank account or personal property in West Virginia. It does not own, lease or rent real property in West Virginia. Onda represents that it has never solicited, directly or indirectly, the sale of any of its products in West Virginia. It asserts that it has never sent any sales representatives, product brochures, advertisements or product information of any kind into West Virginia. Onda also represents that it does not render any services in West Virginia and does not give advice to anyone in West Virginia in regard to any of its products. It contends that it has never received reve-

nue, either directly or indirectly, from West Virginia. With regard to the instant litigation, Onda asserts that Zambelli, the displayer of the fireworks, bought Onda's product in Japan by sending purchase orders or special written orders from Pennsylvania to Tokyo, Japan. Finally, it states that it had no knowledge of the particular fireworks display which resulted in the Plaintiff's injury.

In short, Onda presents an impressive argument to support its position that it has had little or no contact with the State of West Virginia. Nevertheless, the Court is convinced that Onda can be sued in this Court without affront to the principles of due process.

Onda relies upon the recently decided case of *Asahi Metal Industry Co. v. Superior Court of California,* —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi,* the plaintiff was injured while riding a motorcycle. Claiming that a blowout of the rear tire had caused him to lose control of the motorcycle, he sued, *inter alia,* the Taiwanese manufacturer of the tire tube, Cheng Shin Rubber Industrial Company. That defendant in turn brought a crossclaim against the manufacturer of the tube's valve assembly, Asahi Metal Industry Company. Eventually all claims were settled except for the crossclaim between the two manufacturers. Asahi argued that it should not be subject to suit in California. The issue was litigated in the California courts and eventually reached the United States Supreme Court.

The California Supreme Court noted that Asahi had no offices, property or agents in California. Neither had the defendant solicited business or made sales in California. The Court further acknowledge that Asahi had no control over the system of distribution which took its product into California.

Despite these facts the California Supreme Court overruled Asahi's objections as to personal jurisdiction.

"[T]he court found the exercise of jurisdiction over Asahi to be consistent with the Due Process Clause. It concluded that Asahi knew that some of the valve assemblies sold to Cheng Shin would be incorporated into tire tubes sold in California, and that Asahi benefited indirectly from the sale in California of products incorporating its components. The court considered Asahi's intentional act of placing its components into the stream of commerce—that is, by delivering the components to Cheng Shin in Taiwan—coupled with Asahi's awareness that some of the components would eventually find their way into California, sufficient to form the basis for state court jurisdiction under the due process clause."

*Id.* at 1031.

Justice O'Connor, delivering the opinion of the United States Supreme Court, criticized the California court's reliance upon the stream-of-commerce theory. She wrote that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 1033. Justice O'Connor, however, wrote those words on behalf of a plurality of the Court. Only three other members of the Court joined her in adopting a narrow construction of the stream-of-commerce theory. Four other justices flatly rejected that construction. Those justices, through Justice Brennan, opined that the Court's holding in *World-Wide Volkswagen* had preserved the stream-of-commerce theory.[1] It noted that a majority of the courts of appeal

---

1. The passage in *World-Wide Volkswagen* cited by Justice Brennan reads as follows:
   "Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."
   *World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68.

continue to employ that theory in one form or another.

The opposition to Justice O'Connor's opinion went only to a portion—the portion where she rejected the stream-of-commerce theory in its purest form. All but one justice agreed with a second portion wherein she articulated separate reasoning for dismissing Asahi from the California suit. Justice O'Connor declared in part two of her opinion that under the peculiar facts of the case, it would not comport with "fair play and substantial justice" to subject the defendant to jurisdiction. The peculiar facts which led to the near unanimity can be found in the nature of the case as it came to the Supreme Court. The individual plaintiff was no longer in the case. Other defendants evidently had compromised their potential liability. So, the remaining controversy was an indemnity claim by a Taiwanese corporation against a Japanese corporation concerning a product made in Japan, sold in Japan and shipped to Taiwan. In stepping aside from the traditional inquiry into minimum contacts, the Court cited the following considerations:

> "A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interests of the several States in furthering fundamental substantive social policies.'"

Asahi, 107 S.Ct. at 1034 (quoting World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564.)

Justice Stevens wrote separately to express his opinion that the issue of minimum contacts did not need to be reached. He noted that the second ground articulated by Justice O'Connor was sufficient for the decision reached by the Court. Also, he stated that even if the plurality's analysis of the stream-of-commerce theory was cor-rect, it did not apply to the facts before the Court. Without great elaboration, Justice Stevens stated his belief that because of its history of dealings with Cheng Shin, Asahi had "arguably engaged in a higher quantum of conduct than '[t]he placement of a product into the stream of commerce, without more....'" Id. 107 S.Ct. at 1038 (quoting plurality opinion).

The splintered writings of the justices in the Asahi case arguably leave in doubt the continued viability of the stream-of-commerce theory. Nevertheless, the Supreme Court's endorsement of the theory in World-Wide Volkswagen taken together with the lack of consensus in Asahi convinces this Court that the theory continues to have precedential value. Moreover, the Court finds differences between Asahi and this case which distinguish the plurality's reasoning.

This is not the situation found in World-Wide Volkswagen where the Court rejected the notion that the purchaser of a product could by unilateral action subject the selling defendant to jurisdiction in a foreign forum. The buyer and seller here are both commercial entities. One feeds on the other. The more markets Zambelli, the fireworks displayer, served, the more markets Onda, the fireworks manufacturer, served. The economic posture of the car dealer in World-Wide Volkswagen was not enhanced by the consumer's travel through Oklahoma. Its sale was to a local customer. The nature of the product, not the nature of the relationship between buyer and seller, dictated that the product might end up in Oklahoma.

There is one distinction between this case and Asahi which the Court finds significant. In Asahi the defendant was contributing to a product which was being manufactured abroad. Asahi was the manufacturer of a component. Onda, on the other hand, manufactured a finished product for sale to an identified customer in the United States.[2] Asahi was dealing with a corpora-

2. The Supreme Court implicitly recognized this distinction in its opening sentence in Asahi when it cast the question in terms of whether a foreign defendant who manufactured compo-nents for sale and delivery outside the United States was susceptible to personal jurisdiction in a state because of its awareness that the stream of commerce might take its product into that

tion from a neighboring country. It was one step removed from a connection with this country and the forum state. On the other hand, Onda was dealing directly with Zambelli. This was not the traditional stream of commerce case where a manufacturer attaches a part to a product which ends up in some remote, unanticipated market. There was not much of a stream here. Onda sold directly to Zambelli. Zambelli used the product throughout the United States.

Onda obviously had sufficient contacts with the State of Pennsylvania. As it points out, however, minimum contacts with Pennsylvania does not translate into constitutionally sufficient contacts with West Virginia. Nevertheless, the Court finds disingenuous any suggestion by Onda that it did not realize its products were being used outside of Pennsylvania. Onda representives had visited Zambelli's plant in Pennsylvania. It knew the scope of his operation. It should have had every expectation that its product would be used in states other than Pennsylvania.

A finding of no personal jurisdiction would offend the practicalities of the situation. It would be to close one's eyes to the benefits which Onda reaps from the use of its products in West Virginia—a use which is determined not by some faceless entity down the commercial chain, but by Onda's American purchaser, Zambelli.

Finally, unlike the situation in *Asahi*, the forum state here, West Virginia, does have a substantial interest in the litigation. The Plaintiff is a West Virginia resident and was injured in West Virginia. The interest of the state in providing its injured residents a convenient forum, though not necessarily predominant, is a significant consideration.

For the foregoing reasons, the Court concludes that Onda is subject to the jurisdiction of this Court. Accordingly, its motion to dismiss for lack of personal jurisdiction is denied.

The Court ORDERS Onda to file its answer to the Plaintiff's complaint within fourteen days of the date this Order is entered.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

state. Moreover, the plurality referred to the case of *Humble v. Toyota Motor Company, Ltd.*, 727 F.2d 709 (8th Cir.1984). In that case the Eighth Circuit found that a Japanese corporation was not subject to jurisdiction merely because it had manufactured component parts, car seats, outside the United States and delivered them to Toyota Motor Company in Japan.