The **FEDERAL INSURANCE COMPANY**, Plaintiff–Appellant,

v.

**LAKE SHORE INC.; Peterson Builders, Incorporated, Defendants–Appellees.**

**and**

**American Ship Management, Incorporated, Defendant.**

No. 89–1404.

United States Court of Appeals, Fourth Circuit.

Argued July 11, 1989.

Decided Sept. 20, 1989.

ing their claim barred by the statute of limitations.

Elizabeth Thomas Anderson (G. Dana Sinkler, Sinkler & Boyd on brief) for plaintiff-appellant.

Timothy William Bouch (Stephen P. Groves, Young, Clement, Rivers & Tisdale on brief), Warren William Ariail (David C. Norton, Holmes & Thomson on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

The question on appeal is whether the exercise of personal jurisdiction would offend the " 'traditional notions of fair play and substantial justice' " embodied in the constitutional principles of due process. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). We hold that defendants lack "minimum contacts" with South Carolina and are thus not subject to suit in a South Carolina forum. In the absence of such contacts, neither the unique nature of ocean-going vessels nor a general stream of commerce theory will support the exercise of personal jurisdiction in this case.

In so holding, we affirm the judgment of the district court.

I.

In April of 1985, General Electric Company shipped a turbine accessory base aboard the vessel known as the M.V. PAUL BUNYON. While the turbine accessory base

was being loaded aboard the vessel, a cargo winch allegedly malfunctioned causing the accessory base to fall and become damaged. The incident took place while the vessel was docked in Charleston, South Carolina. Pursuant to their contract of insurance, Federal Insurance Company paid GE $322,543.46 for the damage to the turbine accessory base. Federal, a New Jersey corporation, is thus the subrogated insurer of GE.

The M.V. PAUL BUNYON was designed and manufactured by Peterson Builders, Incorporated, a Wisconsin corporation with its principal place of business in Sturgeon Bay, Wisconsin. Peterson is engaged in the design and manufacture of ocean going vessels. Lake Shore, Incorporated is a Michigan corporation. Its principal place of business is Iron Mountain, Michigan and it is engaged in the design, manufacture, and sale of cargo winches. A Lake Shore cargo winch was installed on the vessel manufactured by Peterson.

In March of 1988, Federal filed suit against Peterson and Lake Shore in the United States District Court for the District of South Carolina. Federal invoked the admiralty and maritime jurisdiction of the district court; alleged causes of action for negligence, strict liability, and breach of express and implied warranties; and sought to recover the $322,543.46 paid to its insured, plus interest and costs. Peterson and Lake Shore entered special appear-

ances and moved to dismiss the action for lack of *in personam* jurisdiction. *See* Fed. R.Civ.P. 12(b)(2). The district court granted defendants' motions on November 17, 1988.

Federal now appeals.[1]

## II.

### A.

Federal contends that Lake Shore and Peterson are subject to the personal jurisdiction of the district court. We disagree. The exercise of personal jurisdiction over Lake Shore and Peterson would exceed the limits of due process and is therefore constitutionally impermissible.[2]

Due process protects individual defendants from being bound *in personam* by judgments of a forum with which they lack meaningful relations, *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985), and requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stewart, J., concurring in the judgment). The "fair warning" requirement affords a degree of predictability to the legal system and permits potential defendants to structure their conduct "with some minimum assurance as to where that conduct will and will not render them liable

1. Federal's complaint also included causes of action against American Ship Management. American, a Delaware corporation, hired the vessel's officers and crew and handled the vessel's insurance needs. The district court held that it did not have personal jurisdiction over American and therefore granted American's motion for summary judgment. American is not party to this appeal.

2. Congress has not authorized nationwide service of process in admiralty cases. South Carolina's long-arm statute, *see* S.C.Code Ann. §§ 36–2–802 & 36–2–803 (Law.Co-op.1976), must therefore be applied in determining whether defendants are amenable to suit in South Carolina federal district court. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 283 (3d Cir.1981). *See also Burstein v. State Bar of California,* 693 F.2d 511, 514–17 (5th Cir.1982). The district court was thus re-

quired to resolve two questions before it could exercise personal jurisdiction over Lake Shore and Peterson: (1) whether there was state statutory authority for the exercise of jurisdiction; and (2) whether the exercise of jurisdiction comports with federal due process standards. *See Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904, 909 (4th Cir.1984). Here, "the first question collapses into the second," *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir.1976), because the South Carolina long-arm statute has been construed to extend jurisdiction "to the outer limits" of due process. *Triplett v. R.M. Wade & Co.,* 261 S.C. 419, 200 S.E.2d 375, 379 (1973). The state law and due process analyses are therefore identical and we proceed directly to determine whether it is constitutionally permissible to require Lake Shore and Peterson to defend this suit in South Carolina federal district court.

to suit." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *See also Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181. In determining whether the exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum," *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Here, defendants' contacts with South Carolina suggest an absence of purposefulness, *see Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), and are constitutionally insufficient to establish personal jurisdiction.

■■■ Federal contends, for example, that Lake Shore and Peterson are subject to the jurisdiction of the district court because they placed defective products in the "stream of commerce" which allegedly caused injury in South Carolina. According to Federal, the district court may exercise jurisdiction over defendants because it was "inevitable" that the M.V. PAUL BUNYON would dock in various ports, including Charleston, South Carolina.

Foreseeability alone, however, "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566. If it were, a "seller of chattels would in effect appoint the chattel his agent for service of process" and his "amenability to suit would travel with the chattel." *Id.* at 296, 100 S.Ct. at 566. *See also DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284–85 (3d Cir.1981). What "is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567, *citing Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). Jurisdiction is therefore proper only where the defendant's contacts create a "substantial connection" with the forum. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. Although the Supreme Court has stated that a forum may assert personal jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum," *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239.

A "stream of commerce" theory of personal jurisdiction, therefore, cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law. Here, Federal has failed to demonstrate that Lake Shore and Peterson have "purposefully availed" themselves of the privilege of conducting business in South Carolina. It is undisputed, for example, that Lake Shore and Peterson do not maintain offices in South Carolina and are not licensed to do business in the state. Neither Lake Shore nor Peterson have agents, employees, or subsidiaries in South Carolina, and neither defendant maintains a bank account or owns real or personal property in the state. Although the record indicates that Lake Shore has made sales to South Carolina residents subsequent to the accrual of Federal's cause of action, all such sales have been initiated by the customer; they are not the result of sales efforts by Lake Shore in South Carolina. In addition, all products and materials sold to South Carolina residents have been shipped F.O.B. Michigan, and we agree with the district court that, cumulatively, Lake Shore's sales do not represent "significant activities" within the state. *See Kee-*

ton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Lake Shore and Peterson also do not directly advertise or solicit customers in South Carolina. Although Lake Shore is listed in the *Thomas Register*, a nationally distributed trade journal, such a listing, standing alone, does not confer personal jurisdiction. *See Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046 (4th Cir.1988).

Subsequent to the accrual of Federal's cause of action in April of 1985, Peterson has sent employees to South Carolina to perform warranty work on a United States naval vessel stationed in Charleston and has executed a one-year contract with a South Carolina shipyard to provide support services for that warranty work. These contacts, however, are insufficient to justify the assertion of general jurisdiction over Peterson. All work is scheduled at the request of the Navy, and the arrangements between Peterson and the Navy and Peterson and the shipyard are of limited duration. In short, Peterson has not engaged in "significant activities" in South Carolina, *cf. Keeton*, 465 U.S. 770, 104 S.Ct. 1473, and has not created "continuing obligations" between itself and residents of the forum. *Cf. Travellers Health Ass'n v. Virginia*, 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). *See also Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84. We agree with the district court that these contacts are insufficient to hold Peterson amenable generally to suit in the state.

Thus, appellant may not rely on an unadorned "stream of commerce" theory to justify the assertion of personal jurisdiction over defendants. Appellant's alleged injuries did not arise out of defendants' direct or indirect commercial activities in the South Carolina market for cargo winches or ocean going vessels, and Lake Shore and Peterson did not create, control, employ, or benefit from a distribution system which brought the vessel to South Carolina. *Cf. Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1986) (O'Connor, J.). Although the vessel's ability to dock in ports like Charleston may increase the demand for defendants' products and services, such an "attenuated benefit is insufficient to support the assertion of personal jurisdiction." *DeJames*, 654 F.2d at 285.

■ The cargo winch at issue was manufactured in Michigan and the vessel was designed and manufactured in Wisconsin for American Heavy Lift Shipping Company (AHL), a Delaware corporation. The contract of sale between Peterson and AHL was executed in Wisconsin and Pennsylvania and AHL accepted delivery of the vessel in Wisconsin. The case is therefore distinguishable from those "stream of commerce" cases where a manufacturer employs an intermediary or distributor in the forum state and thereby benefits legally from the protection provided by the laws of the forum and economically from indirect sales to forum residents. *See Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1125–26 (7th Cir.1983); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199–200 (5th Cir.1980). *See generally DeJames*, 654 F.2d at 285. Neither Lake Shore nor Peterson had any control over the vessel or its voyage itinerary once it was sold to AHL. From defendants' perspective, the vessel's presence in South Carolina was a mere fortuity and therefore cannot provide the basis for the exercise of personal jurisdiction. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1478. The "unilateral activity of another party or a third person" cannot satisfy the "minimum contacts" requirement of due process, *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1983), and the decision by the owner of the vessel to dock in Charleston is therefore insufficient to support personal jurisdiction over Lake Shore and Peterson in South Carolina.

We need not, of course, reject a "stream of commerce" theory in all circumstances in order to decide this case. Such a course would be problematic because the issue is one that has closely divided the Supreme Court. We do hold, however, that a "stream of commerce" theory of personal jurisdiction has no applicability here.

Factors that might make such a theory applicable, such as marketing and advertising a product for the forum state, are absent. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1033 (O'Connor, J.). The case also appears to be one in which "a consumer fortuitously transports a defendant's product" into a forum rather than one involving a forum where "the defendant's product was regularly sold." *Id.* at 119, 107 S.Ct. at 1037 (Brennan, J., concurring in part and concurring in the judgment). Finally, the case is not one involving a "regular course of dealing that results in deliveries" of multiple units into a forum "annually over a period of several years." *Id.* at 122, 107 S.Ct. at 1038 (Stevens, J., concurring in part and concurring in the judgment). Whether personal jurisdiction would attach in these latter circumstances under a "stream of commerce" theory is simply not before us.

■■■■ We emphasize that our conclusion obtains in the face of plaintiff's assertions of both "general" and "specific" bases for personal jurisdiction. Specific jurisdiction involves the exercise of personal jurisdiction over the defendant in an action which arises out of the defendant's contact with the forum. *See Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. Where a court seeks to assert specific jurisdiction over a nonresident corporate defendant, the "fair warning" requirement inherent in due process still demands that the defendant "purposely directed" its activities at the forum. *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478. General jurisdiction, by contrast, involves the exercise of personal jurisdiction over a defendant in an action which does not arise out of a defendant's contact with the forum. *Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. In such a case, the defendant's contacts with the forum must be "continuous and systematic" in order to satisfy the due process clause.

We have some difficulty discerning how this action arises out of defendants' contacts with the forum when the sale of the winch and the manufacture and sale of the vessel all took place out of state. In any event, the requirements for the assertion of either specific or general jurisdiction are absent. The defendants have not directed their activities at the forum, and their contacts with the state of South Carolina cannot fairly be described as continuous and systematic. Under either theory of personal jurisdiction, the touchstone of due process is not satisfied. These defendants simply lacked sufficient contacts with the forum state.

### B.

■■■■ Federal also asserts that ocean going vessels should be considered unique for jurisdictional purposes because such vessels are designed and manufactured to travel from port-to-port, state-to-state, and nation-to-nation. According to appellant, shipbuilding by its very nature is intended to serve the market in all states containing major ports; a manufacturer of ocean going vessels is therefore amenable to suit wherever its products happen to dock.

We again disagree. The Supreme Court has rejected a similar argument regarding the mobility of automobiles and has expressly refused to adopt a product-by-product approach to personal jurisdiction. *See World–Wide Volkswagen,* 444 U.S. at 296–97 n. 11, 100 S.Ct. at 567 n. 11. All products are mobile to some extent and a product-by-product approach to personal jurisdiction would succeed only in drawing courts into an arcane and litigious search for meaningless distinctions. Predictability in structuring business dealings would be impaired and personal jurisdiction would rest on random and arbitrary categorizations. The relevant inquiry is the nature of the defendant's contacts with the forum, *see Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), not the unusual or unique characteristics of the defendant's products. Ocean going vessels, automobiles, and other chattels are therefore indistinguishable for jurisdictional purposes. *World–Wide Volkswagen,* 444 U.S. at 296–97 n. 11, 100 S.Ct. at 567 n. 11.

### III.

The lack of overall reasonableness in the assertion of personal jurisdiction constitutes an independent ground for dismissal under Fed.R.Civ.P. 12(b)(2). As both the district court, and the lead opinion in *Asahi*, considered both grounds for dismissal, we accordingly do so here.

The district court found that requiring Lake Shore and Peterson to defend this suit in South Carolina "would offend notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. The overall reasonableness of the assertion of jurisdiction depends on several factors. A court should consider the burden on the defendants, *see id.* at 317, 66 S.Ct. at 158; the interests of the forum state, *see McGee*, 355 U.S. at 223, 78 S.Ct. at 201; and the plaintiff's interest in obtaining relief in the forum. *See Kulko*, 436 U.S. at 92, 98 S.Ct. at 1696. The court also should weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033 (majority opinion), *quoting World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. *See also Burger King*, 471 U.S. at 476–78, 105 S.Ct. at 2184–85.

Here, we agree with the district court that the assertion of personal jurisdiction over Lake Shore and Peterson would be unreasonable and unfair. The burden of requiring Lake Shore and Peterson to defend in South Carolina, for example, would be considerable. Federal's complaint includes causes of action in negligence, strict liability in tort, and breach of express and implied warranties. The witnesses and evidence relevant to these claims are located in Michigan and Wisconsin—not South Carolina. Moreover, Federal and its insured are not residents of South Carolina; appellant's as well as the forum's interests in the dispute are therefore diminished. *See Asahi*, 480 U.S. at 114, 107 S.Ct. at 1034 (majority opinion). Although Federal asserts that South Carolina is "the most logical and convenient forum," plaintiff's convenience alone cannot justify the heavy burden on defendants which the assertion of personal jurisdiction would impose. *See* J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶ 4.41–1[4.–1] (2d ed. 1988) ("[a] court cannot acquire jurisdiction merely because it is the most convenient ... forum"). Indeed, Federal has failed to demonstrate why South Carolina is the most convenient forum in which to litigate its subrogation claim.

### IV.

While the expansion of interstate commerce has resulted in a more flexible jurisdictional standard, *see International Shoe*, 326 U.S. at 310, 66 S.Ct. at 154, "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on ... personal jurisdiction." *Hanson*, 357 U.S. at 251, 78 S.Ct. at 1238. *See also World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565. Among the freedoms protected by the Due Process Clause is the freedom not to be haled indiscriminately into court. The reach of judicial process can constitute a form of coercion no less onerous than other overextensions of the arm of the state. The relationship between the defendant and the forum must therefore be such that it is "reasonable" and "fair" to require the defendant to defend in the forum chosen by the plaintiff. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564; *International Shoe*, 326 U.S. at 316–17, 66 S.Ct. at 158; *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1696. Here, defendants' contacts with the state of South Carolina are insufficient to satisfy the constitutional command. The judgment of the district court dismissing this action for want of personal jurisdiction is

AFFIRMED.