**David Lee ABEL, Plaintiff,**

v.

**MONTGOMERY WARD COMPANY, INC., Montgomery Ward Importing, Inc., and Asahi Enterprises Corporation, Overload Industries Corporation, Defendants.**

**Civ. A. No. 4:92cv2.**

United States District Court, E.D. Virginia, Newport News Division.

July 22, 1992.

Robert T. Hall, Fairfax, Va., John Ward Bane, and Timothy O. Clancy, Hampton, Va., for plaintiff, David Lee Abel.

Jack E. Greer, Norfolk, Va., for defendants, Montgomery Ward Co., Inc. and Montgomery Ward Importing, Inc.

F. Bradford Stillman, Norfolk, Va., for defendants, Asahi Enterprises Corp. and Overload Industries Corp.

## OPINION AND ORDER

MORGAN, District Judge.

### PROCEDURAL HISTORY

This civil action seeking damages for personal injuries was initiated by the filing of a Motion for Judgment on October 11, 1992 in the Circuit Court of the City of Newport News, Virginia, by plaintiff, DAVID LEE ABEL (hereinafter "plaintiff"). The plaintiff named as defendants Montgomery Ward Co., Inc., Montgomery Ward Importing, Inc., (hereinafter sometimes collectively referred to as "Montgomery Ward"), Asahi Enterprises Corporation, Overload

Industries Corporation (hereinafter sometimes referred to as "the manufacturer" in order to avoid confusion with the first named party in the leading case of *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) and William Miller. The plaintiff voluntarily dismissed William Miller without prejudice and the case remained pending as to all other defendants and was subsequently removed to this Court.

Montgomery Ward Co., Inc. is incorporated and has its principal place of business in the State of Illinois and Montgomery Ward Importing, Inc. was, at the time the action was commenced, incorporated and had its principal place of business in Delaware. This corporation was dissolved on December 27, 1990 and, accordingly, both corporations are collectively referred to as "Montgomery Ward". The manufacturer, Asahi Enterprises Corp., Overload Industries Corporation, is a Taiwanese corporation with its principal place of business in Taipei, Taiwan. The plaintiff is a citizen of the Commonwealth of Virginia who resides in York County.

This matter is before this Court for review of the Magistrate's Report and Recommendation which involved the manufacturer's motion filed pursuant to Fed. R.Civ.P. 12(b)(2) on March 12, 1992, moving the Court to dismiss the Complaint for lack of personal jurisdiction over the manufacturer. On March 31, 1992, Montgomery Ward filed a crossclaim against the manufacturer and on April 7, 1992 the manufacturer filed a similar Motion To Dismiss The Crossclaim for lack of jurisdiction which is also before the Court for review. By Order dated April 27, 1992 the motions of the manufacturer to dismiss the Complaint and Counterclaim were assigned to U.S. Magistrate Judge James E. Bradberry who heard argument of counsel on April 30, 1992 and filed his Report and Recommendation on May 29, 1992. The parties have not requested and the Court has not conducted an evidentiary hearing regarding the Motions to Dismiss. The Magistrate Judge recommended that the manufacturer's Motions to Dismiss be denied and the manufacturer filed its Objections to the Report

and Recommendation of the Magistrate Judge on June 15, 1992. The manufacturer objected to the Recommendation of the Magistrate Judge that its Motions to Dismiss be denied and further objected to the Findings of Fact and Conclusions of law contained in his Report and Recommendation. This Court shall review the Findings of Fact and Conclusions of Law and the denial of the manufacturer's Motions to Dismiss *de novo* pursuant to Fed.R.Civ.P. 72(b).

 Where personal jurisdiction is challenged pursuant to Fed.R.Civ.P. 12(b)(2), the parties asserting personal jurisdiction, which in this case include the plaintiff and Montgomery Ward, have the burden of proving the facts necessary to the assertion of such jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673 (4th Cir.1989). When the Court addresses a jurisdictional issue based upon the pleadings, affidavits, and documents submitted, as in the instant case, the plaintiff and Montgomery Ward must establish *prima facie* evidence sufficient for the assertion of personal jurisdiction. In determining whether or not such *prima facie* evidence has been produced, the Court will construe the pleadings, affidavits, documents, and inferences therefrom in the light most favorable to the plaintiff and Montgomery Ward. *Combs* at 676.

Having considered such evidence and the record in the light most favorable to the plaintiff and Montgomery Ward, the COURT FINDS that there is sufficient *prima facie* evidence to support the assertion of personal jurisdiction over the manufacturer with respect to the plaintiff's Complaint as well as with respect to Montgomery Ward's crossclaim and the COURT ACCORDINGLY AFFIRMS the Recommendation of the Magistrate Judge.

## FACTS PERTINENT TO JURISDICTION

Plaintiff, a Virginia resident, alleges that he was seriously injured while riding a bicycle that was produced by the manufacturer and sold to him by Montgomery

Ward. The manufacturer denies that this Court has personal jurisdiction, contending that it is a Taiwanese corporation that is not qualified to do business in Virginia, that it maintains no offices or employees in the State, that it has not purposefully availed itself of the privilege of conducting activities in Virginia's market or directed the transport of the bicycle to this State, that its transaction with Montgomery Ward was completed in Taiwan and that Montgomery Ward shipped the bicycle from Taiwan to Los Angeles, California.

On August 1, 1989, plaintiff purchased a bicycle from a Montgomery Ward store in Hampton, Virginia. The manufacturer produced the bicycle in Taiwan and sold it, along with approximately 6,560 other bicycles, described in an Import Order dated July 29, 1988 (hereinafter "import order") to Montgomery Ward, "FOB Taiwan." Montgomery Ward shipped the bicycle to Los Angeles, California. Import orders dated July 25, 1986, July 29, 1988, and September 19, 1988, confirm that this shipment was not an isolated one but part of a continuous and systematic course of dealing. Montgomery Ward purchased approximately 49,000 bicycles from this manufacturer between July 25, 1986 and September 19, 1988. *See* Import Orders, Attachment to Montgomery Ward's Rebuttal Brief to Asahi's Rebuttal Brief. The number of bicycles that ultimately reached Virginia is unknown, but the Court can and does infer that multiple units did so.

The import order negotiated between Montgomery Ward and manufacturer contained several significant provisions. Specifically, the manufacturer (referred to in the import order as the seller), agreed, in Paragraph 8 of the import order, to indemnify and hold harmless Montgomery Ward Importing, Inc., its subsidiaries, its affiliates, and its affiliate's sales agencies against suits for injuries arising out of the use of its merchandise. The manufacturer further agreed to defend such suits under certain circumstances.

The manufacturer extended specific warranties regarding the quality of its merchandise in Paragraph 5 of the import order. Certain of these warranties parallel the implied warranties applicable to sales in Virginia and applicable in other states pursuant to the Uniform Commercial Code. This provision required the manufacturer to furnish "complete written instructions as to the use ..." of the bicycles and further required the manufacturer to "obtain and maintain Underwriter's Laboratories, Inc. ('UL') listing ..." on all bicycles.

The manufacturer specifically extended its warranties and guarantees vertically to the subsidiaries and affiliates of Montgomery Ward in Paragraph 15. Paragraph 9 of the import order, which requires the manufacturer to obtain products liability insurance, demonstrates that the manufacturer well understood the possibility that litigation in the several states could arise from the sales and accompanying warranties and guarantees.

From the foregoing, the Court infers that: (1) that the manufacturer produced bicycles for sale to Montgomery Ward which it knew would be resold throughout the United States; (2) the manufacturer derives a benefit from the United States market by drawing substantial revenue as a result of the resale of its bicycles by Montgomery Ward; (3) the manufacturer also derives a benefit from Montgomery Ward's distribution system which resulted in its product being sold in Virginia and the several states where Montgomery Ward has numerous locations; (4) the manufacturer's warranties and the owner's manual furnished with the subject bicycle, pursuant to Paragraph 5 of the import order, establish that the manufacturer must reasonably have anticipated that its warranties and instructions would follow the bicycles into the hands of consumers through Montgomery Ward outlets in Virginia and other states, thereby establishing "continuing obligations" between itself and such consumers; (5) the manufacturer should have anticipated being haled into Court in those forums where its products were resold, was obligated to purchase insurance to protect itself, reserved rights to defend its products, and obligated itself to indemnify Montgomery Ward.

## AUTHORITY

■ In order to determine if the Court can assert personal jurisdiction over the manufacturer, the Court must first consider the mechanism by which process was initially served upon it. The Virginia Longarm Statute furnishes a sufficient mechanism. The Longarm Statute subjects foreign defendants to the jurisdiction of Virginia Courts to the full extent permitted by due process. *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 534–35, 238 S.E.2d 800, 802 (1977). The COURT FINDS that the rationale set forth by Montgomery Ward in its Brief In Opposition To Motion To Dismiss is accurate and concise and the Court adopts that portion of the brief which discusses the Virginia Longarm Statute as its basis for the application of the Longarm Statute.

Secondly, the Court agrees with the manufacturer that the Fourth Circuit's decision in *Federal Insurance Co. v. Lake Shore,* 886 F.2d 654 (4th Cir.1989) which, in turn, analyzes *Asahi Metal Indus. Co., Ltd., supra,* and its predecessors, is the controlling authority regarding the determination of this Court's exercise of personal jurisdiction over a foreign corporate defendant in this Circuit. However, it appears to this Court that *Lake Shore* as well as *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *Asahi* are factually distinguishable from the instant case in the following particulars:

1. The instant case involves a course of activity which is akin to "... marketing the product through a distributor who has agreed to serve as the sales agent in the forum State"[1] as opposed to an isolated instance where a single product or component was brought into the forum by the consumer or third party.

2. Unlike *Asahi, World–Wide Volkswagen,* and *Lake Shore,* the sale of the manufacturer's product took place in the forum State of Virginia.

3. In the instant case, the manufacturer specifically recognized potential tort litigation in its import order by including a potential obligation to defend Montgomery Ward, the distributor which sold its product to the plaintiff in Virginia, and agreeing to purchase liability insurance to protect itself.

4. Unlike *Lake Shore* and *World–Wide Volkswagen,* there is not another obvious forum for the plaintiff in the United States, as the manufacturer urges that the sale transaction was completed in Taiwan. Accordingly, the plaintiff may have no forum available in the United States apart from Virginia.

Therefore, the Court believes that it must be guided by the rationale espoused in *Asahi* and *Lake Shore,* and not by the holding in these cases since the latter is distinguishable from the instant case.

## MINIMUM CONTACTS

In *Asahi* a divided Supreme Court states:

The "substantial connection," *Burger King,* 471 U.S., at 475 [, 105 S.Ct. at 2183;] *McGee,* 355 U.S., at 223, [78 S.Ct. at 201,] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State. Burger King, supra,* at 476 [, 105 S.Ct. at 2184;] *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 [, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790] (1984).

*Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis in original).

Applying this rule in the instant case, this Court must find some action by the manufacturer purposefully directed toward the forum State.[2] An example of such action

1. Based upon the multiple sales from the manufacturer to Montgomery Ward and the number of units involved in each sale, the Court does not believe that it must view the sale of the bicycle in question as a single isolated instance. The Court believes that the sales infer a "continuous and systematic" course of dealing by the manufacturer in Virginia, although such has not, at this point, been established by a preponderance of the evidence.

2. In a footnote in *Asahi* 480 U.S. at 114, 107 S.Ct. at 1033, the Supreme Court recognizes the possibility of a distinction between "... the

purposefully directed toward the forum State is "... marketing the product through a distributor who has agreed to serve as a sales agent in the forum State." *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. This Court infers that the manufacturer knowingly marketed its product through Montgomery Ward via Montgomery Ward's retail outlets located in Virginia and other states. While Montgomery Ward may not precisely fit the definition of a distributor or sales agent and while "... it did not create, control, or employ the distribution system that brought its ..." product to Virginia, *Id.*, this Court finds that the manner in which it marketed its product brings the manufacturer within the intent of the rule established by the majority in *Asahi.*

In addition to the benefits gained by marketing its product through a retailer with outlets throughout the United States, the manufacturer undertook, in its import agreement: to indemnify Montgomery Ward against claims such as those involved in the instant case; to defend Montgomery Ward in certain tort actions; to extend additional warranties which may flow through to the consumer; to apply the import agreement to Montgomery Ward's subsidiaries and affiliates; to maintain liability insurance to protect itself against claims such as those set forth by the plaintiff in the instant case; and, finally, to provide instruction books which were distributed with its product.

These contractual undertakings by the manufacturer take its contacts with Virginia a step beyond the mere foreseeability that its products may find their way into this forum. These provisions give the manufacturer notice that it "should reasonably anticipate being haled into court ...", in those forums, including Virginia, where Montgomery Ward sells the manufactur-

er's products to consumers. *Lake Shore* at 658.

In addition to the warranties contained in its import agreement, which would potentially extend to the consumer, the manufacturers' instruction book accompanied its product into the hands of the consumer.[3] These warranties and instructions created "continuing obligations," *Lake Shore* at 659, between the manufacturer and the consumer. Accordingly, the manufacturer may not successfully argue that the only connection between it and Virginia was the "unilateral activity ..." of Montgomery Ward in selling its product in Virginia. *See Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) and *Lake Shore* at 659.

Similarly, by agreeing to defend Montgomery Ward under certain circumstances, the manufacturer "... purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws", *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Based upon the pleadings, including the briefs, the allegations of the plaintiff and Montgomery Ward, the documents submitted, and the reasonable inferences from each, the COURT FINDS that there is *prima facie* evidence of a "substantial connection", *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), "between the ..." manufacturer and Virginia "... necessary for a finding of minimum contacts ..." based upon "... *an action of the defendant purposefully directed toward the forum State."* *Id.* at 476, 105 S.Ct. at 2184.

## STREAM OF COMMERCE

It is not clear to this Court the extent to which the Supreme Court in *Asahi* and the

---

aggregate of national contacts rather than ... the contacts between the defendant and the State in which the federal court sits."

**3.** The instruction booklet has been filed with the Court and Montgomery Ward infers that the booklet was prepared by the manufacturer. The manufacturer, on the other hand, objects to the Magistrate Judge's reliance upon the book-

let, stating that it is just as likely that Montgomery Ward Importing prepared the manual. This is an invalid argument since the manufacturer correctly recognizes that the Magistrate Judge and this Court are relying upon inferences to establish the existence of *prima facie* evidence, not, at this point, determining the preponderance of the evidence.

Fourth Circuit in *Lake Shore* have adopted or rejected the "stream of commerce" theory previously discussed by the Supreme Court in *World–Wide Volkswagen.* This Court does observe that in several cases where personal jurisdiction has not been asserted, including *World–Wide Volkswagen, Asahi,* and *Lake Shore,* a single product or component was brought into the forum State by a consumer or third party. Whereas, in most of the cases where personal jurisdiction was found, such as *Nelson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980) and *Hall v. Zambelli,* 669 F.Supp. 753 (S.D.W.V.1987), there were multiple products brought into the forum State by the manufacturer's distributor and the sale occurred in the forum State.

■ If the stream of commerce theory as described by the Fourth Circuit in *Lake Shore* is the test, this COURT FINDS that the plaintiff and Montgomery Ward have cited *prima facie* evidence sufficient to assert personal jurisdiction.

The factors *Lake Shore* cites "... that make such a theory applicable, ...", *Lake Shore* at 660, include:

(1) marketing and advertising the product in the forum State, which is absent in the instant case as in *Lake Shore;* and

(2) that if "the defendant's product was regularly sold", *Asahi,* 480 U.S. at 119, 107 S.Ct. at 1035, in the forum State as in the instant case, as opposed to being fortuitously transported into the forum State as in *Lake Shore;* and

(3) "a regular course of dealing that results in deliveries" of multiple units into a forum "annually over a period of several years", *Asahi,* 480 U.S. at 122, 107 S.Ct. at 1037; *Lake Shore,* at 660, as inferred in the instant case, and contrary to the facts in *Asahi* and *Lake Shore.*

This COURT FINDS that by citing *prima facie* evidence of factors (2) and (3) herein, the plaintiff and Montgomery Ward have satisfied the "stream of commerce" test. This Court believes that these three factors should not be treated as three es-

sential elements, but rather, as three independent bases for jurisdiction, the satisfaction of any one of which is sufficient to assert jurisdiction under this theory.

## OVERALL REASONABLENESS WITH RESPECT TO PLAINTIFF'S COMPLAINT

■ Even if the Court finds that there is a basis for personal jurisdiction under the minimum contacts theory or the stream of commerce theory, the lack of overall reasonableness in the assertion of personal jurisdiction constitutes an independent ground for dismissal under Fed.R.Civ.P. 12(b)(2), *Lake Shore* at 661. In determining whether the assertion of personal jurisdiction over the manufacturer meets the additional test of overall reasonableness, there appear to be five factors which the Court must weigh:

1) the burden upon the defendants, *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945), which in the instant case is considerable; and

2) the interests of the forum State, *McGee v. International Life Insurance Company,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), and the Court believes Virginia would be interested in the resolution of plaintiff's case in this forum, particularly since there may not be an alternative forum available in the United States; and

3) "the plaintiff's interest in obtaining relief in the forum", *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978), and this Court believes the plaintiff is interested in obtaining relief in this forum; and

4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversy ...", *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032, and the Virginia forum appears to be the most efficient locale in which to resolve the controversy between the plaintiff and the manufacturer;

5) "... the shared interest of the several states in furthering fundamental substan-

tive social policies", *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1032, and the several states certainly wish to furnish the injured party a forum in which to seek redress for the alleged wrongdoing of a manufacturer whose products are widely sold in the several states.

Again, this Court does not interpret these factors as essential elements, a favorable view of each of which a party must establish to assert or defeat jurisdiction, but rather as separate considerations to be weighed by the Court in determining if the assertion of personal jurisdiction over a particular foreign corporation is reasonable under the overall circumstances of a particular case.

The manufacturer suggests that Virginia's interest in the resolution of its citizen's complaint against the manufacturer is diminished by the presence of Montgomery Ward from whom he "can obtain complete relief." Virginia is certainly interested in the safety of all products consumed in the Commonwealth regardless of the identity of the seller. This interest certainly would be promoted by holding manufacturers as well as sellers to its standards since there is no reason why Virginia must assume that a particular manufacturer's product will only be sold by one retailer. It is certainly true, however, that Virginia has less interest in Montgomery Ward's counterclaim than in the plaintiff's complaint and this issue is hereinafter discussed.

## OVERALL REASONABLENESS WITH RESPECT TO MONTGOMERY WARD'S CROSSCLAIM

The manufacturer suggests that the Magistrate Judge did not make a distinction between the assertion of personal jurisdiction against it with respect to the plaintiff's claim and, alternatively, with respect to the crossclaim of Montgomery Ward. There is no distinction to be made with respect to the existence of minimum contacts or with regard to the application of the stream of commerce theory.

On the other hand, the factors to be considered in determining the overall reasonableness of exercising personal jurisdic-

tion over the manufacturer are such that the Court could reach different conclusions. However, in weighing those factors in the instant case, the Court perceives no reason to make this distinction. While it is true that Virginia has less interest in determining the crossclaim than in determining the basic complaint of its citizen, this factor is offset by the lesser burden upon the manufacturer in defending a crossclaim in the forum where it is already defending the underlying tort claim. Judicial economy also supports this view, and the other factors to be weighed are essentially neutral.

## PRELIMINARY FINDING

The manufacturer correctly points out that there has been no evidentiary hearing in this case and, therefore, the standard upon which this Court applies in asserting personal jurisdiction is a finding of *prima facie* evidence. The Court recognizes that the plaintiff and Montgomery Ward must, at an appropriate point in the proceeding, establish by a preponderance of the evidence the facts upon which they rely in asserting personal jurisdiction over the manufacturer. Accordingly, this Court's finding is preliminary and the manufacturer as well as the plaintiff and Montgomery Ward will each have an opportunity to present evidence relative to the issue of personal jurisdiction over the manufacturer at the trial on the merits of this controversy, *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

## SUMMARY AND CONCLUSION

In summary, the COURT FINDS preliminarily that minimum contacts are present as a basis to assert personal jurisdiction over the manufacturer and, alternatively, that applying the stream of commerce test leads to the same result. The COURT FURTHER FINDS preliminarily that the assertion of personal jurisdiction over the manufacturer meets the overall reasonableness test with respect to both the plaintiff's claim and Montgomery Ward's crossclaim. Accordingly, the COURT DENIES the

manufacturer's Motions to Dismiss the complaint and crossclaim.