## RYOBI AMERICA CORPORATION

v.

### Jerry M. PETERS.

### Civ. A. No. 8:92–2468–3.

United States District Court,
D. South Carolina,
Anderson Division.

March 10, 1993.

---

Robert Bugos, Easley, SC, Ernie L. Brooks, John E. Nemazi, John M. Halan, Brooks & Kushman, Southfield, MI, for plaintiff.

Jefferson V. Smith, Jr., Carter, Smith, Merriam, Rogers & Traxler, Greer, SC, Hubert E. Dubb, Jill L. Robinson, Fliesler, Dubb, Meyer & Lovejoy, San Francisco, CA, for defendant.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This lawsuit is a declaratory judgment action in which the plaintiff, Ryobi, seeks a determination that the defendant's patent, U.S. Patent No. 4,445,412 (the '412 patent), is invalid, unenforceable, or that Ryobi has not infringed on the patent. The defendant Peters has filed a motion to dismiss under Fed.R.Civ.P. 12(b). Peters asserts that no justiciable controversy exists, that this Court lacks personal jurisdiction over Peters, and that venue in the District of South Carolina is improper.

The court agrees with Peters that the controversy is not ripe for adjudication and that the court does not have *in personam* jurisdiction over the defendant. The court does not reach the issue of whether venue is proper.

## I.

*Existence of Actual Controversy*

As with any lawsuit, an actual controversy between the parties must exist before a declaratory judgment is ripe for adjudication. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). In a declaratory judgment action "the plaintiff has the burden of establishing by a preponderance of the evidence, *inter alia*, that it has a reasonable apprehension that it will be sued." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir.1992). In a case involving the non-infringement or invalidity of a patent, a two pronged test determines whether an actual controversy exists. "First, the accused infringer must have actually produced or prepared to produce an allegedly infringing product." *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634 (Fed.Cir.1991). "Second, the patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues." *Id.* However, this test, like others, "must be read, applied, and perhaps modified in light of the facts of subsequent cases." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988).

The parties agree that the first prong of the test is satisfied. Ryobi's manufacture of

the BT3000 product aroused Peters' interest as a possible infringement of the '412 patent. Therefore, the focus of the inquiry is on the second prong of the test.

In determining whether Ryobi was under a reasonable apprehension of suit, the court "must first look for any express charges of infringement, and if none, then to the 'totality of the circumstances'". *Shell Oil*, 970 F.2d at 888 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988)). Ryobi claims that the January 21, 1992 letter to Ryobi from Peter's attorney, coupled with subsequent oral representations by the attorney, constituted an express charge of infringement. Ryobi also claims that a reasonable apprehension of suit follows from the totality of the circumstances.

As to the letter, Ryobi's argument is that the last sentence of the third paragraph, standing alone, is an express charge of infringement. That sentence reads: "Thus, it appears to us that your product falls literally within the language of at least claim 1 of the '412 patent whereby some type of licensing arrangement would be desirable for both parties." But this sentence must be read in the context of the entire letter to properly ascertain its meaning. The letter states that the defendant retained counsel to "investigate [the Ryobi product] and to initiate negotiations" with Ryobi with a view toward a license agreement. The letter recites a description of Ryobi's product based on two Ryobi product information fliers. The letter is clear that the this description is derived from the fliers and that Peters "would prefer to have more detailed information." The letter does not describe Peters' product or make any reference to details of the '412 patent.[1] Peters' letter merely attempts to open legitimate business negotiations. Peters included sufficient detail about the basis for the proposed negotiations in order to demonstrate that his inquiry was not frivolous or specious. This letter did not raise an express claim of infringement. This letter "merely constitutes a statement of [Peters']

position in negotiations relative to [Ryobi's] activities." *Shell Oil*, 970 F.2d at 888.

Ryobi further argues that certain oral representations allegedly made by Peters' attorney during the course of negotiations are sufficient to constitute an express claim of infringement. The parties apparently began negotiations as contemplated in Peters' letter of January 21. Clearly, as in all negotiations, there are statements made by all sides as the parties seek to discover the relative strengths and weaknesses of their claim. The court is of the opinion that representations of counsel as to the strength of Peters position were designed to demonstrate that Peters, an individual who developed his product as a side line business, had a credible business position. The court finds that Peters' counsel made no express claim of infringement.

As noted earlier, "[w]hen the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances.'" *Arrowhead*, 846 F.2d at 736. Ryobi makes two arguments that the circumstances support the existence of a reasonable apprehension of suit. The first argument is that Peters refused to admit, in response to Ryobi's Request for Admission, that he would never sue Ryobi. Apparently, Ryobi's argument is that Peters refusal, during the discovery phase of a declaratory action, to grant Ryobi a general release as to the subject matter of the action somehow constitutes an eminent threat to sue. Even if the premise is true, which the court doubts, this argument must fail because "later events may not create jurisdiction where none existed at the time of filing." *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 635 (Fed.Cir.1991). That is, "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Arrowhead*, 846 F.2d at 734, n. 2. Clearly, Ryobi can not "bootstrap" jurisdiction by relying on statements that were made during post filing discovery.

---

1. In its memorandum Ryobi characterizes this portion of the letter as "analyzing the language of the '412 patent claims as applied to the [Ryobi product]." Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss at 2. This characterization is clearly erroneous.

Ryobi's second argument is that "Peters' demands for royalty payments from Ryobi constitute yet another factor in favor of Ryobi's reasonable apprehension of an infringement suit." Plaintiff's Memorandum in Opposition at 11. Ryobi cites *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed.Cir.1983) as authority for a *per se* rule, applicable to these facts, that a demand for royalty payment must indicate a reasonable apprehension of suit. However, in that case, Bard had previously entered into a licensing agreement with Schwartz and had paid royalties under that agreement. Furthermore, when Bard stopped making the royalty payments, Schwartz sued to recover under the licensing agreement. The court found that the fact that Schwartz had sued to enforce the license created a reasonable apprehension of suit regarding the underlying patent. However, the relationships of the parties and the factual background in *Bard* are significantly different than those in the instant case. Here, the parties had no prior relationship. Furthermore, at no point did Peters put Ryobi to the choice of paying royalties or suffering the consequences. As noted above, Peters' communication to Ryobi was merely a statement of his negotiation position.

The overall thrust of Ryobi's argument seems to be that whenever a patent holder attempts to open business negotiations concerning the patent, a reasonable apprehension of suit on the part of the alleged infringer necessarily follows. It may be that businesses such as Ryobi routinely assume that all proposed negotiations either resolve by contract or by lawsuit. However, Jerry Peters is not a large business with ample resources to support a major litigation effort. Peters is an individual who has created a small side line business in his home workshop. He is employed on a full time basis in a position not relevant to this discussion. Peters sells his product to Robert Bosch Power Tool Corporation who sells the product under Bosch's name. It would be unfair to apply any assumption regarding the decision to bring complicated litigation to such an individual. The court finds that the "totality of the circumstances" does not support a reasonable apprehension of suit by Ryobi.

For the above reasons, the court finds that no justiciable controversy exists in this case.

## II.

### *Personal Jurisdiction*

 Peters further argues that this court does not have personal jurisdiction over him. When the court's personal jurisdiction over the defendant is challenged, the plaintiff has the burden of showing that such jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). However, where, as here, the court is proceeding on the basis of the motion, memoranda, and affidavits, the plaintiff must simply make out a *prima facie* showing that jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). This court has jurisdiction over the subject matter of this declaratory judgment case under 28 U.S.C. §§ 2201 and 2202. The court also has jurisdiction under 28 U.S.C. § 1338 and under the patent laws of the United States, Title 35 of the United States Code. However, because the applicable statutes do not provide for nationwide service and because Peters can not be found in South Carolina, this court may only exercise jurisdiction over Peters pursuant to the South Carolina Long Arm Statute, S.C.Code Ann. § 36-2-803 (1976). *See* Fed.R.Civ.P. 4(e). The Long–Arm Statute in South Carolina is construed to extend jurisdiction to the limits of Due Process. *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank*, 287 S.C. 228, 336 S.E.2d 876, 878 (1985). Because the extent of the statute and the relevant constitutional tests are the same, the inquiry for this court is simply whether the exercise of jurisdiction over Jerry Peters violates his right to Due Process. *See Federal Ins. Co. v. Lake Shore, Inc.* 886 F.2d 654, 657 n. 2 (4th Cir.1989).

 The Due Process Clause of the Fourteenth Amendment is violated when the exercise of personal jurisdiction over a nonresident defendant offends the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See also Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under this standard, a court cannot exercise jurisdiction over a person unless that person has established at least minimum contacts with the forum state. *Burger King.* That is, Ryobi must show that Peters purposefully availed himself of the privilege of conducting activities with the forum state. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Ryobi argues that Peters' January 21 letter (described above) constitutes sufficient contact with South Carolina to support specific personal jurisdiction.[2] Simply put, this declaratory judgment action did not arise out of Peters' mailing a letter to Ryobi concerning the design of one of their products. The letter did not cause any alleged patent infringement. The essential transaction here is the granting of a patent in Washington, D.C. and Ryobi's subsequent manufacture of an allegedly infringing product. The letter did not create any cause of action on Ryobi's part. The letter is not a contract. It is not in any way tortious. The letter is merely a statement of a business position sent into South Carolina in response to Ryobi's conduct. Any contact between South Carolina and the alleged infringement are the result of Ryobi's acts. Peters has not done anything such that "he should reasonably anticipate being haled into court" in South Carolina. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In *KVH Industries, Inc. v. Moore,* 789 F.Supp. 69 (D.R.I.1992), a case similar to the instant case, the court found that a letter mailed into the forum state charging patent infringement was not sufficient to confer specific personal jurisdiction. That case surveyed the cases on both sides of the question and rejected the argument for jurisdiction. The court summed up the issue by saying that:

2. Specific jurisdiction exists where the defendant's contact with the forum creates the cause of action. *Federal Ins. Co. v. Lake Shore, Inc.* 886 F.2d 654, 660 (4th Cir.1989). On the other hand, general jurisdiction "involves the exercise of personal jurisdiction over a defendant in an action which does not arise out of a defendant's

[T]he Court does not feel that one letter (or even several letters) asserting allegedly valid patent rights, can give rise to personal jurisdiction, specific or general. This cannot be the sort of meaningful, purposeful forum contacts the Supreme Court had in mind in *Burger King* and *Asahi Metal* [*Ind. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ]. If the Court found personal jurisdiction in this case, it would be tantamount to announcing that all patent holders are susceptible to suit in this forum if they assert their rights against a [South Carolina] resident. This is not a desirable policy. It would be unfair and unjust to adopt a rule that to uphold her rights, a patent holder must submit to the jurisdiction of a wrongdoer's forum.

*Id.* 789 F.Supp. at 73. This court agrees.

Ryobi also argues that the sale of some of Peters' devices in South Carolina is enough to confer jurisdiction on a "stream of commerce" theory. Peters sells his product to Robert Bosch Power Tool Corporation who sells the product under Bosch's name. It is undisputed that Bosch sold a few of these devices in South Carolina.

In *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654 (1989), the Fourth Circuit Court of Appeals surveyed the application of the "stream of commerce" theory of jurisdiction. The court concluded that "[a] 'stream of commerce' theory of personal jurisdiction, therefore, cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law." *Id.* at 658. The court found that an unadorned "stream of commerce" theory could not support jurisdiction in that case because the plaintiff "failed to demonstrate that [the defendants] 'purposefully availed' themselves of the privilege of conducting business in South Carolina." *Id.*

Peters has not "purposefully availed" himself of the protection and privileges of South Carolina law. Like the defendants in *Lake*

contact with the forum. In such a case, the defendant's contacts with the forum must be 'continuous and systematic' in order to satisfy the due process clause." *Id.* Clearly, the record does not support any finding of general jurisdiction.

*Shore,* Peters does not maintain offices in South Carolina and is not licensed to do business in the state. Peters employs no one in South Carolina, owns no property in South Carolina, and does not maintain any bank accounts in South Carolina. Peters does not advertise or promote his product in South Carolina. Peters has no control or influence over Bosch's sale of his device. Whatever profit Peters derives from the sale of his devices is realized at the time Bosch buys them. According to Bosch, they sell an average of less than four devices per year at an average Bosch price of approximately $60.00. This stream is surely a trickle. Furthermore, this is not a tort case. This case is a declaratory judgment action involving a patent. The usual "stream of commerce" case is a claim arising out of the use or existence of the product itself. This case does not arise out of any use or presence of the device in South Carolina. A declaratory judgment action involving a patent, when properly brought, does not depend on the actual manufacture of the item by the patent holder or the patent holder's licensee. The fact that Robert Bosch sold some of Peters devices in South Carolina is not relevant to any patent infringement issue. In this case, as in *Lake Shore,* Ryobi's cause of action "did not arise out of defendant's direct or indirect commercial activities in the South Carolina market [for this device]." *Lake Shore,* 886 F.2d at 659. Therefore, in this case, the "stream of commerce" theory cannot support the court's exercise of personal jurisdiction over Peters.

For the reasons stated above, this court finds that Ryobi has not made out a *prima facie* case for the exercise of personal jurisdiction over Jerry Peters in this case. Ryobi has not demonstrated that Peters had the requisite minimum contacts with South Carolina to justify such jurisdiction.

### III.

#### *Conclusion*

This court finds that no justiciable controversy exists in this declaratory action involving a patent claim. The court further finds that, as an independent basis for its decision, the Due Process Clause of the Fourteenth Amendment forbids the exercise of personal

jurisdiction over the defendant, Jerry Peters. In light of these dispositions, the court declines to address the remaining issues that were briefed and argued.

THEREFORE, IT IS ORDERED that the defendant Jerry M. Peter's Motion to Dismiss is granted.

IT IS SO ORDERED.