**ALPHA WELDING AND FABRICATING, INC., Plaintiff,**

v.

**TODD HELLER, INC., Defendant.**

Civ. A. No. 3:93–0569.

United States District Court, S.D. West Virginia, Huntington Division.

Nov. 9, 1993.

Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for plaintiff.

Colin M. Cline, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Justice.

Pending is Defendant's motion to dismiss or, in the alternative, for transfer to the United States District Court for the Eastern District of Pennsylvania.[1] For reasons discussed more fully below, Defendant's alternative motions are DENIED. The Court, as it must, resolves all factual disputes in favor of Alpha Welding and Fabricating, Inc. (hereinafter "Alpha").[2]

### I. MOTION TO DISMISS

Alpha filed this action in June, 1993, in the Circuit Court of Cabell County, West Virginia. Defendant Todd Heller, Inc. (hereinafter "Heller") thereafter removed the case to this Court. Alpha seeks damages for breach of contract arising from Heller's purchase of a "glass benefication unit" (hereinafter "the unit") from Alpha.

The president of Alpha, Larry Langley, asserts "The overwhelming majority of the work ... on this contract has been performed in Huntington, West Virginia." Affidav. of Larry Langley at ¶ 16. Mr. Langley states he "reviewed all labor costs and determined that eighty-seven percent (87%) of the work on the contract was performed in" West Virginia. Id. at ¶ 13. Apparently the unit was manufactured, assembled, painted and tested in Huntington before it was disassembled, cleaned, packed and shipped F.O.B. Huntington to Heller. Id. at ¶ 11. Alpha asserts that Heller had actual knowledge at the time of contracting that substantial portions of the contract's performance would take place in Huntington, West Virginia.

This Court, however, recently held in accordance with settled authority that:

> [w]hen considering a challenge to its personal jurisdiction on the parties' filings, the court must resolve factual conflicts in favor of the party asserting jurisdiction for the purpose of determining whether he or she has made the requisite prima facie showing.

Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va. 1993).

---

[1] Defendant also moved for an extension of time to file a reply memoranda. The Court concludes Defendant has demonstrated good cause for delay in filing the reply. Accordingly, Defendant's motion is **GRANTED.** The Court will also consider the recently filed affidavit of Allen Adkins and Defendant's response thereto.

[2] The Court is aware that Defendant disputes many if not all of Alpha's factual assertions.

Mr. Langley also testifies to (1) participating in numerous telephone conversations initiated by Heller in relation to the contract and (2) the mailing by Heller of at least two payments under the contract to Alpha in Huntington. *Id.* at ¶ 4, 6. He further states Heller entered into twenty-five (25) shipping contracts with K–Lee Trucking Inc. (hereinafter "K–Lee") of Wayne County, West Virginia, to transport parts of the unit to Northampton, Pennsylvania. *Id.* at ¶ 12. Allen Adkins, a dispatcher with K–Lee, states that freight bills were mailed to Heller, which Heller disputed by telephone on several occasions. Affidav. of Allen Adkins at ¶ 4. Telephonic negotiations by K–Lee and Heller resulted in modifications of the amounts due, which Heller subsequently remitted by mail to K–Lee in Wayne County. *Id.* at ¶¶ 5, 6.

Mr. Langley states that in addition to the contract for the unit, Heller "entered into a separate contract with Alpha on December 12, 1992 wherein Heller sold and shipped to Alpha in Huntington … a magnet, rectifier and two (2) metal detectors for inclusion in a different unit built by Alpha for a Georgia customer." Affidav. of Larry Langley at ¶ 14.

Courts traditionally employ a two-step process to determine the presence of personal jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980); *Clark* at 319. This process first determines whether a state's long-arm statute is applicable and, second, whether the statute's exercise of jurisdiction comports with the due process clause of the United States Constitution. *Id.* Given that West Virginia's long-arm statute is construed to be coextensive with due process,[3] however, the statutory and due process considerations merge into one step. *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989). Accordingly the Court proceeds directly to analysis of whether due process permits exercise of personal jurisdiction over Heller.

■ The due process inquiry examines whether "the defendant purposefully established 'minimum contacts' in the forum …

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ When a defendant challenges personal jurisdiction via *Rule* 12(b)(2), Federal Rules of Civil Procedure, the plaintiff bears the burden of ultimately proving the existence of jurisdiction by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Clark* at 319. However, plaintiff need only make a prima facie showing of jurisdiction when the court addresses the challenge simply on the motion papers, legal memoranda, affidavits and other documents. *Clark* at 319. *Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C.1993).

■ The Court first examines whether Heller has established the requisite minimum contacts with West Virginia. Minimum contacts exist if defendant has purposefully directed its activities toward the forum. *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993). If defendant has created a substantial connection with the forum, then defendant has purposely availed itself of the privilege of conducting business there. *Id.*

■ According to Alpha, Heller entered not only the contract which forms the basis of this dispute, but also the contract relating to Alpha's Georgia customer and the twenty-five contracts with K–Lee. There also appear to be several oral agreements modifying the parties original compact relating to construction of the benefication unit. The record reveals that both pre- and post-contractual negotiations occurred between the parties—many of which were initiated by Heller. In addition, Alpha asserts a substantial portion of the contract for the unit was performed in West Virginia. Considering these contacts, and others of record, as well as the

---

**3.** *See, e.g., Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 525 (4th Cir.1987).

early stage of this litigation,[4] the Court concludes Heller created a substantial connection with, and purposely directed its activities toward, West Virginia. Accordingly, the minimum contacts portion of the due process inquiry is satisfied.

■ The Court next examines whether its exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." The Court's inquiry is guided by five factors: (1) the burden on defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Ellicott,* 995 F.2d at 479.

There is certainly a slight burden on Heller. Its witnesses and evidence are purportedly located in Northampton, Pennsylvania, and a jury view of the Northampton facility may be necessary. Northampton, though, is less than a one-day drive from Charleston, West Virginia. As to the necessity of a view, Heller asserts, in conclusory fashion, "[t]his plant is not movable and cannot be adequately portrayed in photographs or videotape." Heller, however, has made no particularized showing of (1) why a view is necessary or (2) why appropriate exhibits will not convey the same message as would a visit to the Northampton site.

As to the second factor, West Virginia "has an interest in adjudicating the action insofar as it seeks to ensure the economic health of its citizens and the fair resolution of their disputes." *Ellicott,* 995 F.2d at 479. Further, regarding factor three, Plaintiff's interest in obtaining convenient and effective relief appears best served by allowing it to pursue such relief in this forum. The final two factors present competing interests of both parties. On balance, however, after consideration of all factors, the Court concludes the balance tips toward Alpha at this

stage of the litigation. Accordingly, exercise of personal jurisdiction over this dispute comports with "traditional notions of fair play and substantial justice" and personal jurisdiction is, therefore, proper. Heller's motion to dismiss is **DENIED** without prejudice as Alpha has met the required prima facie showing that jurisdiction is proper.

## II. MOTION TO TRANSFER

Title 28 U.S.C. § 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

A decision to transfer venue is committed to the sound discretion of the trial court. *Southern Ry. Co. v. Madden,* 235 F.2d 198, 201 (4th Cir.), *cert. denied,* 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956); *Uniprop Mfd. Housing Commun. Income Fund v. Home Owners Funding Corp. of Am.,* 753 F.Supp. 1315, 1322 (W.D.N.C.1990).

■ The factors considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va. 1992); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ The movant, most often the defendant, bears the burden of showing the propriety of transfer. *Verosol B.V.,* 806 F.Supp. at 592; *Uniprop,* 753 F.Supp. at 1322. The plaintiff's choice of forum is accorded considerable weight. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *Verosol B.V.,* 806 F.Supp. at 592; *Uniprop,* 753 F.Supp. at 1322. Fur-

---

4. The discovery deadline in this matter does not expire until late January, 1994. Routine discovery may well reveal additional contacts by Hel-

ler. *See Clark v. Milam,* 813 F.Supp. 431, 435 (S.D.W.Va.1993) (finding additional discovery appropriate on the issue of personal jurisdiction).

ther, a transfer motion will be denied if it "would merely shift the inconvenience from the defendant to the plaintiff." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964); *Uniprop*, 753 F.Supp. at 1322.

As to the first four factors, Heller falls short of the required showing. While Heller's witnesses and evidence may be located in Pennsylvania, Alpha's are located in West Virginia. As to the necessity of a jury view, again, Heller's conclusory assertions are accorded little weight. The Court is disinclined to shift the inconvenience of the forum from Heller to Alpha. Balancing these findings with the proposition that Alpha's choice of this forum is accorded great weight, and after due consideration of the remaining factors, the Court concludes Heller has failed to meet its burden under § 1404(a). Accordingly, the motion for transfer to the United States District Court for the Eastern District of Pennsylvania is **DENIED.**[5]

---

**5.** The parties have raised, in preemptive fashion, the issue of which forum's law will control this dispute. Given the early stage of the litigation and the parties dispute as to where substantial performance actually occurred, the Court is not inclined to address a choice-of-law issue on the current record.

The Court also notes Alpha's motion for costs, including reasonable attorney fees. After careful consideration, the Court **DENIES** Alpha's motion.