**AFA ENTERPRISES, INC., T & T Maintenance, Inc., and Larry GLENN, Plaintiffs,**

v.

**AMERICAN STATES INSURANCE COMPANY, Defendant.**

Civ. A. No. 6:93–0684.

United States District Court, S.D. West Virginia, Parkersburg Division.

Feb. 2, 1994.

L. David Duffield, Offutt, Eifert, Fisher & Duffield, Huntington, WV, for plaintiff.

Avrum Levicoff, Anstandig, Levicoff & McDyer, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are plaintiffs' motion to remand and defendant's motion to transfer venue.[1] Plaintiffs brought this action in the Circuit Court of Jackson County, West Virginia, seeking a declaratory judgment concerning insurance coverage.[2] Although the parties' citizenship as set forth in the complaint would not provide complete diversity,[3] defendant removed the action to this Court alleging plaintiffs erred in their designation of the parties' citizenship, and that in fact complete diversity exists between the parties.[4] Plaintiffs moved to remand, modifying their allegations of citizenship but still asserting the parties are not diverse.[5]

The confusion about the parties' citizenship prompted defendant to conduct discovery on the jurisdictional issue. Having completed this limited discovery, defendant opposes the motion to remand, and asserts its designation of citizenship set forth in the petition for removal is correct. Plaintiffs argue that even if the Court finds complete diversity exists, it should nonetheless decline to exer-cise jurisdiction based on *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992).

Defendant urges as well the Court should transfer venue to the Western District of Pennsylvania, pursuant to the provisions of 28 U.S.C. § 1404(a).[6] Defendant contends a transfer of venue would serve the convenience of the parties and witnesses, as well as the interest of justice, because among other reasons, AFA and T & T both have their principal places of business in the Western District of Pennsylvania and virtually all material witnesses reside in that district.

### I.

On September 3, 1991, an aluminum coil fell from a tractor-trailer traveling on Interstate 64 near Huntington, West Virginia. The coil struck a vehicle driven by Eileen Dugan ("Dugan") in which Thomas Harner ("Harner") was a passenger. Harner was killed in the accident, and Dugan was seriously injured.

Harner's estate filed a civil action in the Circuit Court of Cabell County, West Virginia, and Dugan filed a similar civil action in this Court. Both cases included claims of negligence against multiple defendants, including, *inter alia*, Ravenswood Aluminum Corporation ("Ravenswood"), the shipper of

---

**1.** Also pending are defendant's motion to strike motion to remand or find facts relating to jurisdiction, filed September 22, 1993, and defendant's motion for an extension of time to reply to motion to remand, filed September 13, 1993. Because the parties now have completed a period of discovery limited to the jurisdictional issue, and defendants have submitted a full response in opposition to the motion to remand, these defense motions are moot and **DENIED** for that reason.

**2.** Plaintiffs' complaint also contains claims seeking damages for bad faith and violations of West Virginia's Unfair Claims Settlement Practices Act, W.Va.Code § 33–11–4(9), as amended.

**3.** Plaintiffs alleged that AFA Enterprises, Inc. ("AFA") is a Pennsylvania corporation with its principal place of business in Indiana; that T & T Maintenance, Inc. ("T & T") is a Pennsylvania corporation with its principal place of business in Pennsylvania; that Larry Glenn is a resident of West Virginia; and that American States Insurance Company ("ASI") is a Pennsylvania cor-poration with its principal place of business in Pennsylvania.

For purposes of diversity of citizenship, a corporation is deemed to be a citizen of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

**4.** In its petition for removal, defendant asserted that AFA's principal place of business is in Pennsylvania, and that ASI is an Indiana corporation with its principal place of business in Indiana.

**5.** In their motion to remand, plaintiffs allege that both AFA and T & T are Pennsylvania corporations with their principal place of business in Indiana. Plaintiffs concede that ASI is an Indiana corporation with its principal place of business in Indiana.

**6.** 28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

the coils, and Great American Lines, Inc. ("Great American"), the motor carrier to whom the tractor-trailer was leased and whose leased employee was responsible for securing the coils at the Great American terminal prior to the accident. The Harner Estate and Dugan also asserted claims against T & T and Larry Glenn ("Glenn"), a T & T employee, alleging Glenn had negligently supervised the loading and securing of the aluminum coil by the Great American operator.

Great American, T & T, and Glenn were afforded insurance coverage under three separate policies, each with one million-dollar ($1,000,000.00) limits, including two different trucker's policies and a commercial auto policy. T & T and Glenn sought additional coverage under another million-dollar policy issued by Defendant ASI, which provided liability coverage for garage operations. The named insureds on the ASI policy are AFA, T & T's parent corporation, and J.L. McCoy, Inc. ("McCoy"). Neither AFA nor McCoy were parties to the Harner or Dugan lawsuits.

The Dugan action was ultimately settled and dismissed in May, 1993. Neither AFA nor T & T incurred any defense costs in connection with the Dugan claim, and all of the settlement costs were paid by the insurers for the various defendants in that case. When plaintiffs commenced this action in Jackson County Circuit Court on July 14, 1993, the Harner wrongful death action was proceeding in Cabell County Circuit Court. The Harner action was later settled in October, 1993. T & T paid $100,000 in connection with settlement of the Harner action. Because neither T & T nor its employee Glenn are named insureds under the ASI policy, ASI refused to provide a defense or coverage to T & T and Glenn for the Dugan and Harner Estate actions.

Plaintiffs contend here that in 1987, AFA acquired McCoy, which had operated a "repair shop" at a trucking terminal in Ravenswood, West Virginia. Soon after the takeover, McCoy ceased operations at the repair shop, and T & T, a wholly-owned AFA subsidiary, took over the business. Plaintiffs assert that after AFA acquired the McCoy operation, it obtained garage liability coverage through Maryland Casualty Insurance Company, listing AFA and T & T as the insureds.[7] Plaintiffs assert that in the course of renewal of the Maryland Casualty policy, an insurance agent by clerical error omitted T & T as a named insured, and instead listed AFA and McCoy. Later, when AFA switched its garage coverage from Maryland Casualty to ASI, the alleged error went undetected, and the ASI policy from its inception named as insureds AFA and McCoy.

Plaintiffs contend ASI knew or should have known T & T was an intended insured under the policy. According to plaintiffs, ASI agents visited T & T operations in Murrysville, Pennsylvania, and Ravenswood, West Virginia, to determine the premium on the policy, and based the premium in part on T & T's payroll. In this action, plaintiffs seek a declaratory judgment that ASI should have provided T & T and Glenn with a defense and coverage during the Dugan and Harner actions.

## II.

In diversity cases, the principal place of business of a corporation, like the other ingredients of diversity jurisdiction, is a preliminary question of fact to be resolved by the trial court. *Sligh v. Doe,* 596 F.2d 1169, 1171 (4th Cir.1979). Once the allegations of jurisdictional facts are properly challenged, as they have been here, the burden is on the party asserting jurisdiction to support the allegations by competent proof. *Mitchell v. Monongahela Power Co.,* 602 F.Supp. 756, 758 (S.D.W.Va.1985) (Haden, C.J.).

A court may employ two analyses to determine where a corporation's principal place of business lies. One is the "nerve center" test, which focuses on the decision-making functions of the corporation; the second is the "site of operations" test, which focuses on the location of the corporation's

---

7. Plaintiffs point out that AFA maintains no garage or repair shop in any state, except through its subsidiary T & T.

tangible assets.[8] *Mullins v. Beatrice Pocahontas Co.,* 489 F.2d 260, 262 (4th Cir.1974); *Mitchell,* 602 F.Supp. at 758. The Fourth Circuit has recognized each of these tests, but has adopted neither exclusively. *Id.* In *Mitchell,* this Court noted that commentators on the diversity statute suggest the site of operations test is the one most consistent with legislative intent,[9] but recognized that the nerve center test is well-suited for cases where there is no clear center of corporate activity because the corporate enterprise is "far-flung and varied." *Mitchell,* 602 F.Supp. at 758–59.

In the present case, the discovery conducted on the jurisdictional issue revealed the following pertinent information about the parties' operations.

1. AFA is a holding company which owns no real or tangible property, and whose sole operations involve deriving management fees and investment income from its numerous wholly-owned subsidiaries. L. William Knoebel, Jr.[10] deposition at 12–16; Angelo A. Fonzi[11] deposition at 7.

2. AFA was incorporated in Pennsylvania in 1981; in filings with the Pennsylvania Corporation Bureau as late as December 29, 1992, AFA identified its principal place of business as Murrysville, Pennsylvania. AFA has repeatedly identified its principal place of business as Murrysville, Pennsylvania in documents filed with government agencies. Knoebel deposition at 24, 31; "Plan and Agreement of Merger," attached as exhibit "G" to defendant's reply in opposition to remand.

3. AFA has seven full-time employees; four work in Murrysville, Pennsylvania, two work in Hammond, Indiana, and one has offices in Murrysville and Hammond, as well as Taylor, Michigan, and Millwood, West Virginia.[12] The company's general counsel works in Sewickley, Pennsylvania. Knoebel deposition at 11; Louis J. Dell'Aquila[13] deposition at 4.

4. All written contracts for AFA's provision of management services to its subsidiaries are generated in the company's Murrysville, Pennsylvania office. All administrative responsibilities regarding the management contracts are performed in the Murrysville office, and each contract specifically directs that all notices under the agreement shall be sent to AFA at its Murrysville office. Knoebel deposition at 32–35; "Management Services Agreements" attached as exhibit "E" to defendant's reply in opposition to motion to remand.

5. AFA's letterhead indicates the company's address is Murrysville, Pennsylvania. The company possesses no letterhead listing any other address. Fonzi deposition at 13; Knoebel deposition at 32.

6. AFA maintains no bank accounts of any kind in Indiana. All of AFA's accounts are kept at a bank in Pittsburgh, Pennsylvania. Knoebel deposition at 20; Fonzi deposition at 12–13.[14]

---

8. *Cf. White v. Halstead Indus., Inc.,* 750 F.Supp. 395, 397 (E.D.Ark.1990) *(recognizing a third test dubbed the "total activity" test, which is a hybrid of the "nerve center" and "site of operations" tests, and "considers all the circumstances surrounding a corporation's business to discern its principal place of business").*

9. *See, e.g.,* 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3625 (1984) ("Wright and Miller"): "... [T]he legislative history of the statute supports the conclusion that emphasis typically should be placed on the locus of operations rather than where policymaking functions are carried out."

10. Mr. Knoebel is vice president of finance of both AFA and T & T. Knoebel deposition at 5–6.

11. Mr. Fonzi is president of AFA. Fonzi deposition at 6.

12. Although Mr. Fonzi said in an affidavit submitted by plaintiffs in support of their motion to remand that AFA operates 43 terminals in 20 states, he conceded in deposition that AFA *subsidiaries* operate the terminals. Fonzi deposition at 21–22.

13. Mr. Dell'Aquila is general counsel for AFA.

14. Although when he was originally asked in his deposition whether AFA held bank accounts only in Pennsylvania, Mr. Fonzi replied "I don't think all of them are," he was apparently referring to the bank accounts of Great American, an AFA subsidiary. Fonzi deposition at 12. Mr. Fonzi later admitted AFA's "principal bank account" is kept at a Pennsylvania bank, and said Mr. Knoebel handles banking matters and "would know that for sure." Fonzi deposition at 13. Mr. Knoebel indicated AFA's accounts are at a Pittsburgh bank. Knoebel deposition at 20.

7.  AFA's financial and insurance activities are arranged in its Pennsylvania office. All the company's investments are established and supervised in Murrysville, Pennsylvania. All liability insurance concerning AFA and its subsidiaries, including the policy at issue in this case, was purchased through Pittsburgh-area brokers. Knoebel deposition at 14; Fonzi deposition at 11–12, 28–29.

8.  All AFA's corporate records, including notices, waivers, minutes of meetings, stock certificates, internal financial statements, and internal accounting records are prepared and maintained in Murrysville, Pennsylvania. Fonzi deposition at 11–12, 17, 36; Knoebel deposition at 18–20, 38–39.

9.  In an "Application for Certificate of Authority of a Foreign Corporation" filed with the State of Indiana under penalty of perjury on February 5, 1992, AFA specifically identified its principal place of business as Murrysville, Pennsylvania. Likewise, in its annual "Report of Foreign Corporation," filed June 30, 1993, with the Indiana Secretary of State, AFA again under penalty of perjury listed its principal place of business as Murrysville, Pennsylvania. "Application for Certificate of Authority of a Foreign Corporation" and "Report of Foreign Corporation," attached respectively as exhibits "H" and "I" to defendant's reply in opposition to motion to remand.

10.  All of AFA's federal and state income tax returns identify the company's principal place of business as Murrysville, Pennsylvania. AFA's tax returns, attached respectively as exhibits "J," "K," "L," and "M," to defendant's reply in opposition to motion to remand.

11.  T & T was incorporated in Pennsylvania in 1986. Its articles of incorporation list its address as Murrysville, Pennsylvania. Knoebel deposition at 24; T & T's Articles of Incorporation are attached as exhibit "N" to defendant's reply in opposition to motion to remand.

12.  T & T is engaged chiefly in repair and maintenance of trucks owned by its sister corporation, Great American. T & T has operations in Murrysville, Pennsylvania, and Ravenswood, West Virginia. The company currently has no operations or employees in Indiana. Daniel B. Schultz [15] deposition at 8; Knoebel deposition at 29–31; Fonzi deposition at 17–18.

13.  T & T maintains all of its corporate records, accounting records, and financial records at its Murrysville, Pennsylvania location. Knoebel deposition at 18–20, 39; Fonzi deposition at 12.

14.  T & T maintains all its bank accounts at a Pittsburgh bank. The company has no bank accounts in Indiana. Knoebel deposition at 22–23.

15.  T & T's letterhead lists its address as Murrysville, Pennsylvania. The company possesses no letterhead listing any other location. Knoebel deposition at 32.

16.  All T & T's insurance policies are obtained through brokers in Pennsylvania. All its insurance claims are processed through a claims manager in Murrysville, Pennsylvania. Schultz deposition at 12–18; Fonzi deposition at 11–12.

17.  Like AFA, T & T listed Murrysville, Pennsylvania as its principal place of business on all its federal and state tax returns and other government filings, including a February 5, 1992, "Application for Certificate of Authority of a Foreign Corporation" filed with the State of Indiana, and a similar filing with the West Virginia Secretary of State in July, 1988. T & T's tax returns, attached as exhibits "K," "L," "M," and "Q" to defendant's reply in opposition to motion to remand; "Application for Certificate of Authority of a Foreign Corporation" and "Application for Certificate of Authority," attached respectively as exhibits "O" and "P" to defendant's reply in opposition to motion to remand.

■ The Court concludes these facts demonstrate in convincing fashion that the operations of AFA and T & T are not "far-flung and varied," and that the "site of operations" test is therefore appropriate in deciding the companies' principal place of business. In determining a corporation's principal place of business, courts typically look to the place

---

**15.** Mr. Schultz is claims manager for Great American. Schultz deposition at 5.

where the corporation would be most visible, would have the most contact with the public, and would consider its home. *Mitchell* 602 F.Supp. at 758 (citing *Nuclear Energy Co. v. General Elec. Co.*, 435 F.Supp. 344, 346 (D.Conn.1977)). In making this determination, although no single fact is controlling, the Court may examine factors such as the location where business is carried out, where people are employed, where bank accounts are held, where assets are located, where taxes are paid and returns are filed, where administrative, accounting, and corporate records are kept, where meetings are held, etc. *See* 13B Wright and Miller § 3625.

■ Each of these enumerated factors compels the Court's conclusion that both AFA and T & T are Pennsylvania corporations with their principal place of business in Murrysville, Pennsylvania. The Court possesses jurisdiction over this case by virtue of the complete diversity of the parties. 28 U.S.C. § 1332. Defendant properly removed this action pursuant to the provisions of 28 U.S.C. § 1441(a).

### III.

■ Plaintiffs argue based on *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992), even though diversity jurisdiction might exist, certain concerns present in the instant case counsel against this Court's exercise of jurisdiction.[16] The *Mitcheson* court recognized two distinct concerns a district court should weigh before entertaining an insurer's declaratory judgment action concerning its obligations in a pending state action. *Mitcheson*, 955 F.2d at 237. First, the court should consider the state's interest in deciding questions of state law; second, the court should consider the state's interest in resolving all litigation stemming from a single controversy in a single court system. *Id.*

The Court is cognizant and respectful of the state interests outlined by the *Mitcheson* court; however, those concerns do not weigh toward remand in the present case. Though

there existed at the time this suit was brought pending related litigation in the Cabell County Circuit Court, that litigation has since been settled. There is not now any pending state litigation related to this action. *Nationwide Mut. Ins. Co. v. Welker*, 792 F.Supp. 433, 437 (D.Md.1992). Moreover, this case was brought not in Cabell County Circuit Court, where the state action was filed, but in the Circuit Court of Jackson County. Remand to a state court other than that where the underlying action was pending surely would not promote the interest of judicial efficiency or encourage resolution of this action in a single court system.

Were there in fact ongoing state litigation related to this action, remand on the basis of the factors enumerated in *Mitcheson* might indeed be appropriate. However, this litigation in its present status presents no basis for the Court to decline to exercise jurisdiction.

### IV.

■ Defendant urges this Court to transfer venue to the Western District of Pennsylvania, pursuant to the provisions of 28 U.S.C. § 1404(a). For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a); *Alpha Welding and Fabricating, Inc. v. Todd Heller, Inc.*, 837 F.Supp. 172, 175 (S.D.W.Va.1993) (Haden, C.J.). It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988); *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); *Alpha Welding*, 837 F.Supp. at 175. District courts have greater discretion to transfer venue under 28 U.S.C. § 1404(a) than to dismiss on the grounds of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*,

---

**16.** Although ordinarily, the federal judiciary is obligated to resolve all questions within its jurisdiction, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), under the

Declaratory Judgment Act, federal courts have discretion in deciding whether to hear a declaratory action. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Mitcheson*, 955 F.2d at 237.

454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981).

■ Motions for transfer of venue are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 29, 108 S.Ct. at 2244; *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). To resolve a motion to transfer venue, a district court must "weigh in the balance a number of case-specific factors." *Stewart Org.*, 487 U.S. at 29, 108 S.Ct. at 2244. Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *Alpha Welding*, 837 F.Supp. at 175 (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 592 (E.D.Va.1992); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

■ The movant, most often the defendant, bears the burden of showing the propriety of transfer. *Verosol B.V.*, 806 F.Supp. at 592; *Uniprop Mfd. Housing Commun. Income Fund v. Home Owners Funding Corp. of Am.*, 753 F.Supp. 1315, 1322 (W.D.N.C.1990). The plaintiff's choice of forum is accorded considerable weight. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843; *Verosol B.V.*, 806 F.Supp. at 592; *Uniprop*, 753 F.Supp. at 1322. Further, a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff. *Van Dusen*, 376 U.S. at 645–46, 84 S.Ct. at 823–24 (1964); *Uniprop*, 753 F.Supp. at 1322.

■ Having considered these factors, the Court concludes this action should be transferred to the Western District of Pennsylvania. The Court agrees with defendant that the convenience of the parties, a critical consideration, will be enhanced by the transfer. *Amalgamated Clothing and Textile Workers Union v. Federation of Union Representatives*, 664 F.Supp. 995 (S.D.W.Va.1987) (Haden, C.J.). Although this case indirectly involves an auto accident which occurred in West Virginia, the material facts of this litigation surround plaintiffs' purchase of insurance from defendant and a previous insurer. As defendant notes, virtually all of the witnesses who have any first-hand knowledge concerning the pertinent issues involved, and who may be expected to testify at trial, reside in the Western District of Pennsylvania. AFA, McCoy, and T & T are all incorporated in and have their principal offices in that District, and all their pertinent corporate records are maintained there. Moreover, all the corporate officers of AFA, McCoy, and T & T who had any involvement with the procurement of insurance coverage reside in that District.

Of substantial import in this case is the fact that numerous non-party witnesses critical to all parties in this action appear to be beyond this Court's subpoena power. *Rule 45, Fed.R.Civ.P.*; *Akers v. Norfolk and Western Ry. Co.*, 378 F.2d 78, 79 (4th Cir.1967). Employees of the insurance agency who made the alleged "clerical error" wholly responsible for the denial of coverage work and reside in the Western District of Pennsylvania. These witnesses will be within the subpoena power of the District Court for the Western District of Pennsylvania.

Accordingly, the Court concludes the convenience of the parties and witnesses and the interest of justice require this case be transferred to the United States District Court for the Western District of Pennsylvania. 28 U.S.C. § 1404(a).

## V.

For these reasons, the Court **DENIES** plaintiffs' motion to remand, and **GRANTS** defendant's motion to transfer venue. This case is transferred to the United States District Court for the Western District of Pennsylvania for further proceedings.

The Clerk is directed to send a copy of this Order to counsel.