**JUST WOOD INDUSTRIES, INC., et al., Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, et al., Defendants.**

Civil Action No. 2:99–0451.

United States District Court,
S.D. West Virginia,
Charleston Division.

July 29, 1999.

Johnson W. Gabhart, Taxton & Johnstone, Charleston, WV, for plaintiff.

Alexander Macia, Goodwin & Goodwin, Charleston, WV, James A. Dunbar, Paul F. Strain and John B. Howard, Jr., Venable, Baetjer and Howard LLP, Baltimore, MD, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion to transfer venue from this Court to the United States District Court for the District of Maryland, Northern Division, in Baltimore pursuant to 28 U.S.C. § 1404(a). For reasons discussed more fully below, the Court **DENIES** Defendants' motion; however, the Court acts *ex mero motu* to **TRANSFER** this action to the United States District Court for the Northern District of West Virginia, Martinsburg Division.

## I. FACTUAL BACKGROUND

Plaintiff Just Wood Industries, Inc. ("Just Wood") is a Pennsylvania company which contracted to provide, install, and finish mill work and cabinetry on the National Education and Training Center of the U.S. Fish and Wildlife Service ("FWS") in Shepherdstown, West Virginia.[1] On September 6, 1995 Plaintiffs Gary and Alice Ahalt, individually, and Alice Ahalt as President of Just Wood[2] signed a master surety agreement in favor of Defendants United States Fidelity & Guaranty Company ("USF & G"), Fidelity & Guaranty Insurance Company, and Fidelity & Guaranty Insurance Underwriters, Inc. USF & G then issued a performance bond for Just Wood's contracts on the FWS project.

1. Just Wood subcontracted with Centex–Simpson Construction Company (now Centex Construction Company) on the project.

2. Gary Ahalt is vice president of Just Wood. The Ahalts are West Virginia residents who live in Hedgesville, West Virginia.

3. Centex also filed a counterclaim against Just Wood and a third-party complaint against USF & G. Plaintiffs allege the venue was chosen by USF & G to accommodate its preferred counsel.

In November 1996 and before completion, Just Wood's contracts on the FWS project were terminated by Centex, the general contractor. USF & G financed the Plaintiffs' wrongful termination and breach of contract claims brought against Centex in the Eastern District of Virginia.[3] Plaintiffs allege no final agreement was reached with Defendants regarding attorney fees and costs for the litigation, although Defendants provided an estimate and prediction of $345,757.00. A jury awarded Just Wood $785,000. Centex's appeal of that judgment to the United States Court of Appeals is pending.

Pursuant to the master surety agreement, USF & G sought reimbursement of attorney fees and costs from Plaintiffs in an initial amount of $737,974.14, although fees and costs continue to accrue during the appeal.[4] On May 12, 1999 Plaintiffs filed this civil action in the Circuit Court of Kanawha County, West Virginia seeking (1) a declaratory judgment on the reasonable costs and fees expended in the underlying action and the amount which Plaintiffs are obligated to pay and (2) punitive damages for Defendants' alleged bad faith conduct. Defendants removed the case to this Court based on diversity of citizenship on June 1, 1999. On May 13, 1999 Defendants also filed a civil action in the United States District Court for the District of Maryland to enforce indemnification.[5] Defendants now move to transfer venue to the United States District Court for the District of Maryland, Northern Division, in Baltimore, pursuant to 28 U.S.C. § 1404(a).

4. Plaintiffs allege the amount to be reimbursed is now in excess of $900,000.

5. Just Wood has moved to dismiss the Maryland civil action arguing that court lacks personal jurisdiction over the individual defendants. The Court has not decided this issue and does not rely on this argument to reach its decision denying transfer to that forum.

## II.  DISCUSSION

Title 28, section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court.  *AFA Enter. Inc. v. Am. States Ins. Co.*, 842 F.Supp. 902, 908 (1994) (Haden, C.J.) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).  District courts have greater discretion to transfer venue under 28 U.S.C. § 1404(a) than to dismiss on the grounds of forum *non conveniens*.  *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Motions for transfer of venue are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).  To resolve a motion to transfer venue, a district court must "weigh in the balance a number of case-specific factors."  *Id.*

> Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*AFA*, 842 F.Supp. at 909 (citations omitted).

The burden of showing the propriety of transfer rests on the movant, most often the defendant.  *Id.* (citations omitted).  The plaintiff's choice of forum is accorded considerable weight.  *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)) (stating "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  Further, a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff.  *AFA*, 842 F.Supp. at 909 (citing *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805 (1964)).

Having considered these factors, the Court concludes this civil action should remain in West Virginia.  The action involves West Virginia citizens working on a West Virginia project, bonded under a master surety agreement signed in their West Virginia home, who have chosen to bring their suit in West Virginia.  Admittedly, the case also involves a Pennsylvania corporation, a Maryland corporation, a Virginia law firm, and prior Virginia litigation.  Defendants have calculated the mileage between each of these points to argue that convenience favors Baltimore, Maryland.  That city, of course, is also particularly convenient for Defendants because their home office is located there.[6]  The Court presumes, however, the Plaintiffs calculated their own convenience into their forum decision when they filed this action.  Whatever inconvenience Defendants may suffer by trying the case in West Virginia should not be shifted to Plaintiffs by a court-ordered transfer.

Additionally, the Court notes this case was the first filed in this controversy, predating the Maryland action by one day.  No substantial judicial activity has taken place in either forum.  Had the case proceeded further in either forum, conservation of valuable judicial resources might dictate the single forum in which to litigate these common issues arising out of the same factual situation and involving the same parties.  Both the Maryland and

---

6.  Defendants characterize the case as local to Baltimore because the alleged bad faith actions took place at USF & G's home office there; however, when West Virginia residents sign a contract in West Virginia for bonding their performance of a West Virginia project, controversies which later arise are also local to West Virginia.

West Virginia actions, however, are in the initial stages of litigation.

 Finally, Defendants argue that under *Rule* 45(b)(2) this Court lacks subpoena power over out-of-state non-party witnesses whose appearance may be necessary at deposition, hearing or trial. Fed.R.Civ.P. 45(b)(2). Subpoenas for deposition appearance, however, may be served at any place without the district that is within 100 miles of the place of the deposition, *id.*, which simply requires appropriate location of the deposition convenient to the witness. Presumably, this inconvenience would fall on Plaintiffs, who will be required to hold depositions outside of West Virginia and beyond the 100–mile radius of their chosen venue where they will be convenient for Defendants' witnesses. Were the trial of this matter to be held in Charleston, West Virginia, testimony of unwilling witnesses beyond this Court's subpoena power could be presented by deposition testimony, pursuant to *Rule* 32(a)(3)(B). Fed. R.Civ.P. 32(a)(3)(B). Again any burdens produced by non-appearance of unwilling witnesses presumably would fall more heavily on Plaintiffs. Transferring the action to the Martinsburg Division of the Northern District of West Virginia, however, obviates most of these concerns. Martinsburg is a relatively short distance from every site of disputed facts, witnesses, and documents; many, if not most, will be within 100 miles of the federal courthouse, subject to that court's subpoena power.

As discussed above, the Court may, at its discretion, transfer a civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). An action may be brought in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). In this case, the master surety agreement was signed and the bonded work performed on the FWS project in the Northern District of West Virginia.

## III. CONCLUSION

 The venue transfer rule requires the Court to balance two factors: convenience and justice. While the convenience factor may somewhat favor the Defendants' choice of venue, the Court finds and concludes that, in this case, the interest of justice favors Plaintiffs' choice of a West Virginia venue. Accordingly, the Court **DENIES** Defendants' motion for transfer to the District Court for the District of Maryland at Baltimore and **TRANSFERS** this action to the United States District Court for the Northern District of West Virginia, Martinsburg Division.

The Clerk is directed to send a copy of this Order to counsel of record.