**McJUNKIN CORP. and Precision Clean Piping, Inc., Plaintiffs,**

v.

**CARDINAL SYSTEMS, INC. and O'B, Inc., Defendants.**

No. CIV.A.2:02–0062.

United States District Court, S.D. West Virginia, Charleston Division.

March 26, 2002.

Edward D. McDevitt, Esq., Thomas A. Heywood, Esq., Eric L. Calvert, Esq., Bowles Rice McDavid Graff & Love, Charleston, WV, for Plaintiffs.

Richard D. Owen, Esq., Goodwin & Goodwin, Charleston, WV, Richard A. Wunderlich, Esq., Jeana D. McFerron, Esq., Lewis Rice & Fingersh, St. Louis, MO, for Defendants.

### MEMORANDUM OPINION AND TRANSFER ORDER

HADEN, Chief Judge.

Pending are the motions 1) of Plaintiffs McJunkin Corporation (McJunkin) and Precision Clean Piping, Inc. (Precision) to transfer a related action from the Eastern District of Missouri to this Court and 2) of Cardinal Systems, Inc. (Cardinal) and O'B, Inc. (O'B) to dismiss for lack of personal jurisdiction or, alternatively, to transfer this action to the Eastern District of Missouri. Defendants' motion to transfer is **GRANTED**, and the remainder of the motions are **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Two actions are at issue here: the instant action (the West Virginia action), filed December 21, 2001, and *Cardinal Systems, Inc. v. Precision Clean Piping, Inc. and McJunkin Corp.*, 4:02cv0066 (E.D. Mo. Jan 14, 2002)(the Missouri action), filed January 14, 2002. The West Virginia action was originally filed in the circuit court of Kanawha County and removed, based on diversity jurisdiction.

Both actions concern a May 24, 2001 asset purchase agreement (Agreement) under which Cardinal and O'B, Cardinal's parent corporation, purchased assets of Precision, including its inventory of tubing, tubing materials, fittings, component parts and other items. McJunkin is the sole

shareholder of Precision. The Agreement included warranties of the value and quality of the inventory purchased. Under the Agreement, Cardinal also was obligated to perform services and repairs to fulfill Precision's warranty obligations for product that had been delivered prior to the closing date. In turn, Precision agreed to pay Cardinal its regular charges for performing this warranty work. As agreed, Cardinal held back two hundred thousand dollars ($200,000.00) of the purchase price to pay such claims and adjustments.

After the closing date, a dispute arose about the quality of the inventory purchased. Additionally, distributors and customers of Precision made warranty claims to Cardinal concerning Precision product delivered prior to the closing date, but indemnification for these claims was disputed. Between September 2001 and January 2002, the parties attempted unsuccessfully to resolve their differences.

On December 21, 2001 while these discussions continued, Precision and McJunkin filed this action in West Virginia state court, seeking a declaratory judgment declaring the parties' obligations under the Agreement and an injunction enjoining Defendants from performing warranty work on Precision tubing product. This complaint was never served on Defendants, nor were they advised of its existence.

On January 14, 2002 Cardinal filed the Missouri action alleging breach of contract and notified Precision and McJunkin the action had been filed. On January 16, 2002 Precision and McJunkin served Cardinal and O'B with a summons and copy of an Amended Complaint in the West Virginia action, filed January 15, 2002, which added counts for bad faith and outrage.

Plaintiffs Precision and McJunkin now move to transfer the Missouri action to this Court, while Cardinal and O'B move to dismiss this action for lack of personal jurisdiction or, alternatively, to transfer this action to Missouri.

## II. DISCUSSION

### A. First Filed Action

Where concurrent actions are pending in two federal courts, the first filed should have priority, absent showing of a balance of convenience in favor of the second. *Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed. Appx. 297, 300 (4th Cir.2001)(citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n. 2 (4th Cir.1974)). "First filed" means first filed and not first served. *See UTI Corp. v. Plating Res., Inc.*, No. 99–253, 1999 WL 286441 at *7 (E.D.Pa.1999)(collecting cases). Because this action was first filed in West Virginia state court December 21, 2001, prior to the Missouri action's filing on January 14, 2002, this Court decides the issues of jurisdiction and venue. *See Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F.Supp.2d 948, 955 (E.D.Va.1998)("Because this is the first-filed action, the jurisdiction and transfer issues should be decided here first.").

### B. Personal Jurisdiction

The burden of proving *in personam* jurisdiction rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Determining the propriety of personal jurisdiction is a two-step process. The first inquiry is whether the applicable long-arm statute, *West Virginia Code § 56–3–33*, authorizes the exercise of jurisdiction in these circumstances. The second inquiry is whether the exercise of jurisdiction in these circumstances comports with constitutional due process. *See P.M. Enters. v. Color Works, Inc.*, 946 F.Supp. 435, 438 (S.D.W.Va.1996)(Haden, C.J.) (citations omitted). Because West

Virginia's long-arm statute extends to the limits of due process, *id.*, the analysis "proceeds directly to determine whether it is constitutionally permissible to require Defendants to defend this suit in this Court." *Id.* (quoting *Bashaw v. Belz*, 872 F.Supp. 323, 325 (S.D.W.Va.1995)).

■ To satisfy constitutional due process, the defendant must have sufficient "minimum contacts with West Virginia so that requiring it to defend its interests here would not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction is constitutionally appropriate where a defendant has "purposefully directed" its activities at a forum, and the litigation "arise[s] out of or relate[s] to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). But where contacts are "isolated," the "reasonable forseeability of litigation in the forum is substantially diminished." *Id.* at 476 n. 18, 105 S.Ct. 2174.

Cardinal and O'B are both Missouri corporations with their principal place of business in St. Louis County, Missouri. Precision is a Delaware corporation with its principal place of business in Texas. Precision's sole shareholder is McJunkin, a West Virginia corporation. When Cardinal and O'B sought to purchase its inventory, the tubing and other product were located in Houston, Texas.[1] Under the Agreement, the purchaser was to move the assets to St. Louis, Missouri. (Pls.' Combined Resp., Ex. 1A (hereafter "Agreement") ¶ 3.2.)

According to the affidavit of Michael Wehrle, CFO and Senior Vice President of McJunkin and President of its subsidiary Precision, Cardinal initiated its purchase of Precision by calling Houston. Precision officials in Houston informed Wehrle, who then called Cardinal/O'B in Missouri. (Pls.' Combined Resp., Ex. 1 ("Wehrle Aff.") ¶ 6.) Negotiations proceeded by telephone, fax, and electronic mail. Two Cardinal employees, its business development manager and its customer service manager, visited McJunkin in West Virginia to "perform due diligence." The Agreement was finalized by signature of Cardinal/O'B officials in Missouri, followed by McJunkin in West Virginia.

■ Although a single contractual relationship may furnish a basis for jurisdiction, an individual's contract with an out-of-state party cannot alone automatically establish sufficient minimum contacts. *Chung v. NANA Dev.*, 783 F.2d 1124, 1127–28 (4th Cir.1986)(citing *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174). Any contract relied upon must have a "substantial connection" with the forum state. *Id.* The factors considered in determining whether the defendant purposefully established minimum contacts with the forum include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174.

---

1. By affidavit, Robert O'Brien, President of Cardinal, avers the overwhelming majority of Precision's assets were located in Texas, a very small amount of inventory in Colorado and "none of the inventory was located in West Virginia." (Defs.' Mem. in Opp'n to Pls.' Mot. to Transfer, Ex. 1 ("O'Brien Aff.") ¶ 8.)

In contrast, Wehrle avers, "assets subject to the Agreement were located in Houston, Texas and Charleston, West Virginia." (Wehrle Aff. ¶ 8.) The ostensible West Virginia portion of the inventory is not identified or discussed further, and Wehrle later acknowledges, "[a]fter the sale closed, Cardinal took possession of the product inventory in Houston and shipped it to the St. Louis area." (*Id.*)

Plaintiffs rely on *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir.1982), which found personal jurisdiction under the Virginia long-arm statute over a defendant where a modification letter, which became part of the contract, was addressed to and received in Virginia and telephonic negotiations occurred between participants located in Virginia and elsewhere. In *Peanut*, however, defendant also solicited business through Virginia through manufacturer's representatives, used numerous advertising methods in Virginia to attain substantial revenues from Virginia, and purchased a significant portion of its raw materials in Virginia.

In contradistinction, Cardinal and O'B purchased assets of a Delaware corporation located in Texas, the principal shareholder of which happened to be located in West Virginia. The Agreement involved assets in Texas to be brought to Missouri and warranty work to be performed in Missouri. Two of Defendants' agents visited West Virginia to perform due diligence, but otherwise Cardinal and O'B had no physical, personal contact with the state nor did they attempt or promise to do any further business in the state. The existence of personal jurisdiction is doubtful, and because there are further reasons to transfer this action to Missouri, the Court need not make a final determination on this extremely close question.

## C. Change of Venue

█ Defendants move to transfer this action to Missouri, pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [2] 28 U.S.C. § 1404(a). It is

well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court. *AFA Enter. Inc. v. Am. States Ins. Co.*, 842 F.Supp. 902, 908 (1994) (Haden, C.J.) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). District courts have greater discretion to transfer venue under 28 U.S.C. § 1404(a) than to dismiss on the grounds of forum *non conveniens*. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

█ Motions for transfer of venue are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). To resolve a motion to transfer venue, a district court must "weigh in the balance a number of case-specific factors." *Id.*

Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*AFA*, 842 F.Supp. at 909 (citations omitted).

█ The burden of showing the propriety of transfer rests on the movant, most often the defendant. *Id.* (citations omitted). The plaintiff's choice of forum is accorded considerable weight. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508,

---

**2.** Plaintiffs move to transfer the Missouri action to West Virginia. Section 1404(a) provides for transferring cases *to* another district, but the statute does not authorize the requested transfer *from* Missouri. Accordingly, Plaintiffs' motion to transfer is **DENIED**.

67 S.Ct. 839, 91 L.Ed. 1055 (1947)) (stating "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Further, a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff. *AFA*, 842 F.Supp. at 909 (citing *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805 (1964)).

 Having considered these factors, the Court concludes this action should be transferred to Missouri. While West Virginia is Plaintiff's chosen forum, the manner of its choice suggests forum shopping, a factor that counsels against exercising jurisdiction over a declaratory judgment action.[3] *See Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir.2000). Declaratory judgment actions are not improper when there is a potential lawsuit, *see United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488 (4th Cir.1998), but where a potential lawsuit over the actual issues has become certain or imminent, a declaratory judgment action may suggest an improper race to the courthouse. *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937)(Courts should decline jurisdiction over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction.")

After months of discussion, the parties met in St. Louis on December 18, 2001, but were unable to resolve their differences. (O'Brien Aff. ¶ 23.) On December 20, McJunkin/Precision sent an email to Cardinal/O'B proposing they find a mutually agreeable third-party inspector to arbitrate the dispute, if Cardinal would limit its claims to the two hundred thousand dollar ($200,000.00) hold-back amount. (*Id.*) On December 21, a conference call among all parties discussed the proposal. (*Id.*) On the same day, McJunkin/Precision filed its West Virginia action. According to Wehrle's affidavit, the suit was brought because a claim had accrued on October 15, 2001 when Cardinal/O'B failed to release the first portion of the holdback. (Wehrle Aff. ¶¶ 11, 12.) However, the Missouri parties were not made aware of the West Virginia action by service or otherwise until after January 14, 2002, when Cardinal/O'B informed McJunkin/Precision they had brought an action in Missouri.

The declaratory judgment action appears to have been filed silently, while the parties' negotiations continued, and held in Plaintiffs' hip pocket to preempt Defendants' potential breach of contract action. Procedural fencing may provide an exception to the first-filed rule, such that Plaintiffs' choice of forum is not accorded deference when considering the appropriate venue. *See Ellicott*, 502 F.2d at 180 n. 2.

The inventory, the subject of dispute about its quality, is located in Missouri. The product returned for warranty work, the warranty claims, and the workers and facilities to perform those operations under the Agreement are all located in Missouri. Witnesses testifying about the quality of the product and the necessity for and cost of warranty work are located equally in Missouri, West Virginia, and elsewhere. While Cardinal and O'B have no corporate presence in West Virginia, McJunkin does have a corporate office in Granite City, Illinois, a short distance across the Mississippi River from St. Louis. This contract action is not local to either venue under consideration, and pursuant to the Agreement, Texas law will

---

3. In the declaratory judgment action, McJunkin/Precision also seek to enjoin the Missouri parties from performing warranty work under the Agreement.

govern the dispute. Either district court is capable of applying the law of a third state.

Weighing all these factors, the balance tips slightly in favor of the Missouri venue as more convenient for parties and witnesses. Although the West Virginia action was filed first, convenience of the parties outweighs that priority. In addition, the suggestion of forum shopping and the slim basis for personal jurisdiction in this Court over the Missouri defendants also support the Missouri venue. For all these reasons, the Court **GRANTS** Cardinal and O'B's motion to transfer this action to the Eastern District of Missouri for all further proceedings.

## III. CONCLUSION

Defendants' motion to transfer this action to the Eastern District of Missouri is **GRANTED**. Defendants' motion to dismiss this action for lack of personal jurisdiction is **DENIED**. Plaintiffs' motion to transfer the Missouri action to West Virginia is **DENIED**.

The Clerk is directed to send a copy of this Order to counsel of record and a certified copy to the Clerk of the Eastern District of Missouri and to publish it on the Court's website at http://www.wvsd.uscourts.gov.